# Kendall *v.* The State.

## *Indictment for Murder.*

1. *Sufficiency of verdict.*—Under an indictment for murder, a verdict of
guilty, or guilty as charged in the indictment, not specifying the degree of
murder, is defective, and will not support a conviction, although the offense
is charged to have been committed by poisoning.

2. *Former acquittal; jeopardy; waiver of constitutional privilege.*—When a
verdict of guilty is set aside by the court, because not in proper form to sus-
tain a conviction, and a new trial is granted, the defendant is not regarded as
having been in legal jeopardy, and can not plead this as a former acquittal;
and when this action of the court is had at his instance, it amounts to an
express waiver of the right to insist on the constitutional guaranty against
being placed a second time in jeopardy for the same offense.

3. *Admissibility of confessions.*—The defendant's confessions in this case
held to have been properly admitted as evidence, on the authority of *Brister
v. The State* (26 Ala. 107), and *Murphy v. The State* (63 Ala. 1), notwithstanding
subsequent threats of violence on the part of by-standers.

4. *Proof of confession.*—A witness may testify to confessions voluntarily
made by the defendant, although he does not recollect all the conversation
had with the defendant at the time.

From the Circuit Court of Lowndes.

Tried before the Hon. JOHN MOORE.

The prisoner in this case was indicted for the murder of
Lena Riggs, an infant child of Richard H. and Emma Riggs,
by means of morphine administered in a cup of coffee; and
one count in the indictment charged that the morphine was
put in the coffee with the malicious intent of effecting the
death of Mrs. Riggs, the mother of the child. A trial was
had at the November term, 1879, on issue joined on the plea
of not guilty; and the jury returned a verdict in these words:
" We, the jury, find the defendant guilty, and sentence her to
the penitentiary for life." On this verdict, a judgment was
entered by the court, reciting that the verdict was "guilty of
murder in the first degree," and sentencing the prisoner to

the penitentiary for life ; but, on a subsequent day of the term, the defendant made a motion to correct the judgment-entry, by setting out the verdict as rendered, and also to set aside the verdict, and for a new trial; which motions were continued until the next term, and were then granted, because the verdict did not find the degree of the murder. At the next term, being again arraigned and put on trial, the defendant pleaded a former acquittal, and set out the former proceedings in support of that plea ; but the court sustained a demurrer to the plea, and a trial was again had on the plea of not guilty.

On the trial, as the bill of exceptions shows, the prosecution proved the death of the child, and the circumstances preceding and attending its death, showing that the defendant had procured a small phial of morphine, generally kept in a locked drawer, and put some of it in a cup of coffee, which she prepared and brought to Mrs. Riggs ; and that Mrs. Riggs, on going to the table, and not feeling well, gave the coffee to her two children, who sat near her; from the effects of which, Lena died in a few hours, exhibiting the symptons of narcotic poison. "The State then offered D. J. McCord as a witness, and proposed to prove by him confessions made to him by the defendant" ; and he thus stated, to the court, the confessions and attendant circumstances : "The defendant was arrested in the night of the day on which the poisoning was alleged to have been done, on suspicion of being the person who had done it. After her arrest, she made her escape, but was recaptured a day or two afterwards, and was confined by a chain around her neck, in a negro-house about one hundred yards from the residence of Mr. Riggs, and was guarded by a negro constable. About dark, witness and Mr. Arthur Haynes, another . neighbor, fearing she might again escape, concluded to carry her to the house of Mr. Riggs, and remain there with her that night. They started with her from the negro-house, to the house of Mr. Riggs, with the chain around her neck, and the negro constable and some other negroes along with them. After going a short distance, they came to a tree, when the defendant, without any one having said any thing to her on the subject, said to them, ' *If you will stop here, I will tell you all about it*,' or that in substance. Thereupon, they all stopped, and the defendant stated to them, that she took the morphine out of the bottle in the trunk, and put it in the cup of coffee which she had prepared and was carrying to Mrs. Riggs ; that she was mad with Mr. Riggs, and wanted to kill him, but concluded to try it on Mrs. Riggs first. Witness testified, also, that after they stopped, and

defendant began to tell them about it, other negroes came up to where they were, and when defendant had finished telling them about it, he supposed there were fifteen or twenty, or probably more, present; that after defendant said she had put the morphine in the coffee, as above stated, one of the negroes said to her that she ought to have her neck broken, and made demonstrations of violence towards her; but witness and said Haynes told them they should not hurt her, and then carried her to the house of Mr. Riggs. Witness testified, also, that up to the time when defendant told them to stop and she would tell them all about it, no threat of any kind had been used, and no promise or inducement of any kind made or held out to induce her to tell, and that no threat was made during the entire time, except as above stated." On this evidence, the court held the confessions admissible, and permitted them to go to the jury, against the objection of the prisoner; and to this ruling an exception was duly reserved.

Arthur Haynes, another witness for the prosecution, being offered to prove confessions made by the prisoner at another time, thus testified to the court: "During the Fall term, 1879, of said Circuit Court, witness was sitting near the latticed pen in the court-room (for the safe-keeping of prisoners), and defendant was inside of said pen, but was not otherwise confined, when Dr. Hardy, who was well known to the prisoner, walked up to the pen, and he and witness spoke to each other, saying ' How d'ye do,' and asking about each other's health. Dr. Hardy then asked defendant, if she put the morphine in the coffee; and defendant said she did, and that she was very sorry she had done it. Witness testified, also, that there was some other conversation after that, which he did not now remember, but nothing else was said about defendant putting the morphine in the coffee, or her guilt, that he now remembers." On this testimony, the defendant moved the court to exclude these confessions as evidence, "because they were not voluntary, and because the witness did not recollect all the conversation had between Dr. Hardy and defendant"; and she reserved an exception to the overruling of her objections.

The record and dockets do not show who appeared for the defendant in this court.

H. C. TOMPKINS, Attorney-General, for the State.

SOMERVILLE, J.—A defendant in a criminal case is never regarded as having been in legal jeopardy, when the

indictment is so defective that a judgment rendered on it would be reversed on appeal, and for that reason it is quashed or set aside, no matter how far the prosecution or proceedings in the trial may have progressed.— *Weston v. State*, 63 Ala. 155; Code (1876), § 4819. The verdict of the jury, at the Fall term of the Circuit Court, 1879, failed to find the degree of the crime charged against the defendant; and the conviction, for this reason, could not have been sustained; and the action of the court in setting aside such verdict, and granting a new trial, was unquestionably correct. *Levison v. State*, 54 Ala. 520. This action, furthermore, having been taken at the instance of defendant, was an express waiver of the constitutional privilege of not being placed in jeopardy a second time for the same offense. Tested by these principles, the plea of former acquittal was insufficient, and the demurrer to it was properly sustained.—*Jeffries v. State*, 40 Ala. 381; *Hughes v. State*, 35 Ala. 347.

The confessions of the prisoner were properly admitted. They are shown to be voluntary, and not to have been induced by promises or threats, nor obtained by the influence of hope or fear applied by a third person to the prisoner's mind.—*Murphy v. State*, 63 Ala. 1; *Brister v. State*, 26 Ala. 107. Confessions are always considered free and voluntary, which are not shown to have been "forced from the mind by the flattery of hope, or by the torture of fear." 1 Greenl. Ev. § 219.

It was not a valid objection to the testimony of the witness Hardy, that he did not recollect all the conversation had with the prisoner at the time she made the confession. It was competent for the witness to state all that he did recollect, and the weight or sufficiency of the evidence could be judged of by the jury. This in no manner militates against the principle, that the whole of what the prisoner said on the subject should be taken together,—a rule which has been well pronounced to be "the dictate of reason, as well as humanity."—*Pond v. State*, 55 Ala. 196; *Levison v. State*, 54 Ala. 520; 1 Greenl. Ev., § 218.

Let the judgment of the Circuit Court be affirmed.