## STATE, RESPONDENT, *v.* THOMPSON, APPELLANT.

CRIMINAL LAW — *Indictment — Averment of time.* — An indictment for rape, which charges the commission of the offense "on or about" a certain day, sufficiently states the time under sections 166 and 171 of the Criminal Practice Act, providing, in substance, that the precise time of the commission of an offense need not be stated in the indictment, except where it is an indispensable ingredient of the offense, and that no indictment shall be quashed or set aside for any surplusage or repugnant allegation, where there is sufficient matter alleged to indicate the crime and person charged, nor for any defect or imperfection which does not tend to the prejudice of the substantial rights of the defendant, upon the merits.

SAME — *Idem sonans.* — It is not error for the court to submit to the jury the question as to whether the name as found in the indictment is *idem sonans* with the name proved on the trial, where the names in question are not necessarily pronounced alike.

SAME — *Former jeopardy.* — The plea of former jeopardy cannot be maintained to a second trial which a defendant has obtained upon his own motion. (*Territory* v. *Hart*, 7 Mont. 489, cited.)

*Appeal from Fifth Judicial District, Jefferson County.*

The defendant was tried before GALBRAITH, J.

Statement of the case, prepared by the judge delivering the opinion.

This is an appeal by the defendant from a judgment on conviction for the crime of rape. Three points are relied upon by the appellant, which may be stated as follows:—

1st.  The indictment, in charging the time of the commission of the offense, uses this language, "on or about the twelfth day of April, A. D. 1889." The Criminal Practice Act of this State declares: "Sec. 166. The precise time of the commission of an offense need not be stated in the indictment, but it is sufficient if it is shown to have been before the finding of the indictment and within the Statute of Limitations, except where time is an indispensable ingredient of the offense."

The appellant contends that, notwithstanding this statute, the allegation, "on or about," is insufficient, and renders the indictment fatally defective.

2d.  That there is a fatal variance between the name of the person upon whom the offense is charged to have been committed as set out in the indictment and the proof on the trial of the cause. The name of the injured person is written in the indictment, "Ellen Souderland." What appeared as to her name, on the trial, is as follows: She testified: "My name is Ellen Soderland." The reporter adds, "given as she spelled it." There is nothing here in the record to indicate which of the English sounds of the letter "o" was used, or whether the sound was a Swedish one, to which race the witness belonged. Again, in the evidence she speaks of her name as "Soderlaud," and mentions her brother and sister as "Soderlund." That is to say, so the name is written in the record, but with no information as to the sounds of the letters.

Again, the record states that the father of the girl, "C. W. Souderland," as the reporter writes it, testified as follows:—

"Question.  What is your name? Spell it.

"Answer.  C. W. Saderlund. In English I spell it Sonderlund.

"Q.  How do you spell your name in English?

"A.  Sonderlund; and pronounced the same.

"Q.  How do you pronounce it in your own language?

"A.  Soederland.

"Q.  I will ask you this question: If the diphthong "o" is not a combination of the vowels "oe," is it "o," with two dots over it?

"A.  I can't say about that.

"Q.  Would it be correct to spell your name in Swedish

this way (handing witness paper on which the name is spelled 'Soederland')?

"A. Yes, sir.

"Q. Is that the way you spell it in Swede?

"A. No, sir."

The court then adds in the bill of exceptions: "The difference in sound between the name used in the indictment and that given upon repeated pronunciations by the witnesses on the trial, warranted the court in submitting the question of *idem sonans* to the jury. Both witnesses were Swedes, and spoke with marked accents."

Again, a doctor who testified called her "Soderlund."

The defendant moved for his discharge upon the ground of a variance between the indictment and the proof, as to the name of the injured person. The court refused to discharge the defendant, but submitted to the jury the question whether the name as found in the indictment was *idem sonans* with that described in the proof. The following was the instruction:—

"The name of the prosecutrix is a material averment of the indictment in this case, and the court instructs you that *idem sonans* means of the same sound. If the difference (if you find from the evidence that there is any difference at all) in sound of the name of the prosecuting witness as laid in the indictment and as proved is so slight that the ear cannot readily detect the difference, if any there is, in the pronunciation of the two names, the name as charged in the indictment and the name as proved by the evidence, then the names are said to be *idem sonans*. But if you find from the evidence that the name as charged in the indictment, when pronounced in the English language, differs materially in sound from the name of the prosecuting witness as proven on the trial, according to the English pronunciation, then the two are not *idem sonans*, and this is a fatal variance, and the defendant must be acquitted. Whether there is such a material difference or not is a question for you to determine from all the evidence in the case."

The appellant insists that the names, by the ordinary rules of English spelling, are so dissimilar that the court should have pronounced them not to be *idem sonans*, and it was error to submit the question to the jury.

3d. In addition to his plea of not guilty, the defendant pleaded former conviction. The court instructed the jury that by the laws of the State and under the records in evidence there had been no jeopardy which entitled the defendant to an acquittal under this plea, and that on the issue of former conviction the jury should find for the State.

The facts upon which defendant based his plea were shown upon the trial to be, that a former trial was had February 21, 1890, on which defendant was found guilty, and sentenced to confinement for seventeen years in the penitentiary. On April 15, 1890, defendant himself moved for a new trial, which motion was granted by the court, May 6, 1890. The new trial so applied for and granted was had January 6, 1891, and from the judgment upon conviction on that trial the defendant is now appealing to this court.

Appellant refers us to section 18, article iii. of the Constitution: "No person shall be compelled to testify against himself, in a criminal proceeding, nor shall any person be twice put in jeopardy for the same offense."

In the Criminal Practice Act we find the following: Chapter 13 defines a new trial, and the grounds upon which it shall be granted, and the procedure by which it may be obtained, and section 353 says: "The granting of a new trial places the parties in the same position as if no trial had been had. The former verdict cannot be used or referred to, either in the evidence or the argument."

Appellant contends that the statute cited attempts to make nugatory the constitutional provision quoted above, and that the statute, in attempting to abridge the constitutional right, is unconstitutional and void; that is to say, that under the Constitution, a defendant once convicted, and obtaining a new trial, upon his own application, as in the case at bar, can plead the former conviction in bar, section 353, Criminal Practice Act, to the contrary notwithstanding.

*Word & Smith*, for Appellant.

In every indictment, either at the common law or under our statute, it is absolutely necessary to allege: *First,* the name of the party indicted; *second,* the venue; *third,* some time certain

within the period of the limitations, and before the finding of the indictment; *fourth*, a concise, plain statement of the facts constituting the offense.

It never was necessary to aver in the indictment the exact day upon which the offense was committed, except in those offenses in which time was of the essence of the crime; such as perjury, false swearing, etc. In every other class of crime the pleader could allege any day certain before the finding of the indictment, and within the period of the Statute of Limitations; and on the trial, the pleader was not held to prove the crime on the exact date alleged in the indictment, but could prove any other day within the period of the Statute of Limitations. But it never was proper at common law to leave the allegations, as to time, uncertain or indefinite; but a day and year certain were always alleged, and all the courts and law-writers so decide. Our statute, section 166, Criminal Practice Act, page 435 of the Compiled Laws, says: "The precise time of the commission of an offense need not be stated in the indictment, but is sufficient if it is shown to have been before the finding of the indictment and within the Statute of Limitations, except where time is an indispensable ingredient of the offense." This is simply a crystallization of the common law, and a day certain should have been alleged, instead of the allegation, "on or about the twelfth day of April, A. D. 1889," as used in the indictment. (See Archbold's Criminal Pleading, p. 275; Wharton's Criminal Law, § 261; *United States* v. *Winslow,* 3 Sawy. 337; *Roberts* v. *State,* 19 Ala. 526; *Irvin* v. *State,* 13 Mo. 306; *People* v. *Lafuente,* 6 Cal. 202, 203; *State* v. *Hanson,* 39 Me. 337; *State* v. *Beaton,* 79 Me. 314; *Lucas* v. *State,* 27 Tex. App. 322; *Chandler* v. *State,* Florida, Nov. 20, 1889, 6 South. Rep. 768; *Arcia* v. *State,* 28 Tex. App. 198; *United States* v. *Long,* in the 9th Cir. Ct. before Judge Knowles, which has not yet been reported.)

The next important question in this case is the fatal variance between the name of the person upon whom the appellant is charged to have committed the offense, as alleged in the indictment, and the proof on the trial of the cause. In the indictment the name of the person upon whom the assault was made is Ellen Souderland, while the evidence shows conclusively that

the true name of the person assaulted is "Ellen Sonderlund." The motion to discharge the appellant, on the ground of a fatal variance between the indictment and the proof, should have been sustained. The doctrine of *idem sonans* is too well established in all English and American law and jurisprudence to be disregarded. If the name, as laid in the indictment, and the name, proven on the trial, were of the same sound, then there is not a fatal variance, although the two names may have been spelled slightly different. But there is in this case the greatest difference. Between the two names, "Souderland" and "Sonderlund," there is no similarity in sound. (*Donnel* v. *United States*, 1 Morris, 141; 39 Am. Dec. 457; *Parchman* v. *State*, 2 Tex. App. 228; 28 Am. Rep. 435, and notes; *Schooler* v. *Asherst*, 1 Litt. 216; 13 Am. Dec. 232; *Barnes* v. *People*, 18 Ill. 52; 65 Am. Dec. 699; Wharton's Criminal Evidence, § 94; 3 Greenleaf on Evidence, § 22; *Rex* v. *Tannett*, Russ. & R. C. C. 351; *Rex* v. *Shakespeare*, 10 East, 83; *Ward* v. *State*, 28 Ala. 53; *Bingham* v. *Dickie*, 5 Taunt. 514; *Commonw.* v. *Gillespie*, 7 Serg. & R. 469; 10 Am. Dec. 475; *Swails* v. *State*, 7 Blackf. 324.)

As soon as the evidence for the State disclosed the true name of the prosecutrix, counsel for the appellant moved the court to discharge the prisoner on the ground of a fatal variance between the proof and the indictment. This was at the earliest opportunity counsel had or could raise that question. It was in effect a demurrer to the sufficiency of the proof for the State, and the question of *idem sonans* was a question for the court and not for the jury. (See *State* v. *Havely*, 21 Mo. 498; 1 Thompson on Trials, § 1028; 2 Thompson on Trials, § 2267.)

We submit that the plea of "former conviction," entered by the appellant's counsel, was sustained by the proof. Section 18, page 8 of the Constitution, declares that no person shall be twice put in jeopardy for the same offense. This is no mere idle and useless declaration, but it is the very highest authority, incorporating into our organic law the same principle that has been established for centuries by all the writers of the common law, and sanctioned by all courts before whom the question came. But the legislature of Montana, by section 341, page

466, and section 353, page 468 of the Criminal Practice Act of Montana, have attempted to define the effect of a reversal of a criminal case by the Supreme Court, or the granting of a motion for a new trial by the District Court. Section 353 declares that the granting of a new trial places the parties in the same position as if no trial had been had, and further declares that the former verdict shall not be referred to in the evidence or on the argument of the case. In other words, the statute attempts to make nugatory the constitutional principle "that no person shall be twice put in jeopardy for the same offense." Under the section of the statute referred to, it matters not how flagrant has been the violation of the constitutional rights, the accused is not permitted to invoke his constitutional privileges in his defense.

Any statute which attempts to abridge constitutional rights is unconstitutional and void; and therefore the charge of the court referred to was an error. We make this distinction: Where there has been an error committed on the trial of a case by the jury, or by any power or thing which the court could not control, as sickness, death, or other accidents in the trial. Upon reversal of the case for these or any other errors, over which the trial court had not full control, former conviction cannot be plead as a bar to a second trial; but where the trial court had complete control over the error or judgment in the case, and having such control, pronounced an erroneous judgment in the case, against which the defendant protested at the time. On a second trial the former conviction can be successfully interposed as a bar. In the present case the appellant, in violation of all constitutional rights, was convicted and sentenced for seventeen years to the State prison; and this without having an opportunity to put in his defense. The jury in the case on the first trial were discharged over his protest; and with all these flagrant violations of his rights, under our statutes he must suffer an unjust imprisonment for seventeen years, or make an application for a new trial, because our laws make no provision for a new trial, except upon the application or motion of the accused; and yet it declares that if he does apply for and secure a new trial, he shall not be allowed to plead the former conviction as a bar, however much his constitutional rights may

have been invaded. This is a clear violation of the spirit of the Constitution itself. (1 Bishop on Criminal Law, § 671; *Nolan v. State,* 55 Ga. 521; 21 Am. Rep. 281; *State* v. *McKee,* 1 Bail. 651; 21 Am. Dec. 500; *O'Brian* v. *Commonw.* 9 Bush, 333; 15 Am. Rep. 715; *People* v. *Hunckeler,* 48 Cal. 331; *Hines* v. *State,* 24 Ohio St. 134; *Shepherd* v. *People,* 25 N. Y. 406; 1 Wharton's Criminal Law, § 575, et seq.; *Butler* v. *McMillen,* 13 Kan. 391.)

*Henri J. Haskell,* Attorney-General, and *H. J. Burleigh,* County Attorney, for the State, Respondent.

The term "on or about" does not vitiate the indictment. (*State* v. *Harp,* 31 Kan. 498; *State* v. *Barnett,* 3 Kan. 250; 87 Am. Dec. 471; *State* v. *Tuller,* 34 Conn. 294–297; *People* v. *Littlefield,* 5 Cal. 355; *People* v. *Kelly,* 6 Cal. 210; *Farrell* v. *State,* 45 Ind. 371; *Hampton* v. *State,* 8 Ind. 336; *State* v. *Elliot,* 34 Tex. 148; *Cokely* v. *State,* 4 Iowa, 479; *Rawson* v. *State,* 19 Conn. 295.) *Idem sonans* is a question of fact, and the court did not err in submitting this question to the jury. (Rapalje's Criminal Procedure, p. 110, § 83; Wharton's Criminal Pleading and Practice, pp. 86, 87, § 119; Wharton's Criminal Evidence, pp. 89, 90, § 96; *Underwood* v. *State,* 72 Ala. 220; *Ward* v. *State,* 28 Ala. 53; *Commonw.* v. *Donovan,* 99 Mass. 425; 96 Am. Dec. 765; *Choen* v. *State,* 52 Ind. 347; 21 Am. Rep. 179; *Commonw* v. *Warren,* 143 Mass. 568; *State* v. *Malia,* 79 Me. 540.) And further, all of the evidence goes to show that the girl was commonly known in the community of her residence as and by the name of Ellen Souderland, and that being the case, that is sufficient, although the name stated in the indictment was different from her true name. (See *State* v. *Bundy,* 64 Me. 507; *McBeth* v. *State,* 50 Miss. 81; *Jones* v. *State,* 65 Ga. 147; *Wilson* v. *State,* 69 Ga. 224.)

There was no former jeopardy in this case, for the reason that the defendant upon his own motion obtained a new trial, and by such motion waived his constitutional right to be protected against being twice tried or put in jeopardy for the same offense. (See Comp. Laws Mont. p. 468, § 353; Rapalje's Criminal Procedure, p. 204, § 139; Wharton's Criminal Plead-

ing and Practice, pp. 356, 357, § 518; *People* v. *Webb*, 38 Cal. 480, 481; *Sanders* v. *State*, 85 Ind. 318; 44 Am. Rep. 29; *Jones* v. *Commonw.* 20 Gratt. 848; *People* v. *Gilmore*, 4 Cal. 376; 60 Am. Dec. 620; *People* v. *Backus*, 5 Cal. 278; *People* v. *March*, 6 Cal. 546, 547; *People* v. *Olwell*, 28 Cal. 462, et seq.; *People* v. *Barric*, 49 Cal. 342; *People* v. *Hardisson*, 61 Cal. 379; *People* v. *Schmidt*, 64 Cal. 262; *State* v. *Rover*, 10 Nev. 388; 21 Am. Rep. 745; *State* v. *Tweedy*, 11 Iowa, 357; *State* v. *Knouse*, 33 Iowa, 368; *Smith* v. *People*, 1 Colo. 135; *Johnson* v. *State*, 29 Ark. 31; 21 Am. Rep. 154; *Jones* v. *State*, 55 Ga. 625; *Lewis* v. *State*, 1 Tex. App. 323; *Stuart* v. *Commonw.* 28 Gratt. 950; *Veatch* v. *State*, 60 Ind. 291; *Smith* v. *State*, 41 N. J. L. 598; *State* v. *Stephens*, 13 S. C. 285; *Simco* v. *State*, 9 Tex. App. 338; *Thompson* v. *State*, 9 Tex. App. 649; *Kendall* v. *State*, 65 Ala. 492; *State* v. *Blaisdell*, 59 N. H. 328; *State* v. *Hart*, 33 Kan. 218; *Slaughter* v. *State*, 6 Humph. 410; *Bohanan* v. *State*, 18 Neb. 57; 53 Am. Rep. 791; *State* v. *Patterson*, 88 Mo. 88; 57 Am. Rep. 374; *State* v. *Anderson*, 89 Mo. 312; *People* v. *Travers*, 73 Cal. 580; *People* v. *Palmer*, 109 N. Y. 413; 4 Am. St. Rep. 476; *Hoskins* v. *Commonw.* Ky. Nov. 13, 1886, 1 S. W. Rep. 730; *Wells* v. *Commonw.* Ky. Dec. 17, 1887, 6 S. W. Rep. 150; *Territory* v. *Hart*, 7 Mont. 496.)

DE WITT, J. — The first question which we meet is whether, under our statute, section 166 of the Criminal Practice Act, the allegation of time, "on or about the twelfth day of April, A. D. 1889," is sufficient. The obnoxious words, in appellant's view, are "on or about." Appellant argues that a single certain day must be laid in the indictment, although the proof is sufficient if it bring the offense within the Statute of Limitations.

Appellant cites from Archbold's Criminal Pleading and Practice, page 275: "Formerly, the indictment must have stated, either expressly or by way of reference, the day, month, and year on which each material fact stated in it took place; otherwise the indictment would be bad." He refers us to Wharton's American Criminal Law, section 261: "Time and place must be attached to every material fact averred, but the time of committing an offense (except where the time enters into the nature of

the offense) may be laid on any day previous to the finding of
the bill, during the period within which it may be prosecuted."

He cites Judge Deady, district of Oregon, in *United States* v.
*Winslow,* 3 Sawy. 337, as follows: "Every indictment must
allege a day and a year certain on which the offense was com-
mitted. (1 Bishop on Criminal Law, § 239.) This is the
common-law rule. The Code of Criminal Procedure of this
State, which has been adopted by this court as a rule of practice,
does not change the law. On the contrary, the form of an indict-
ment given in section 70 indicates an absolute averment as to
the time of committing the offense. An allegation that a crime
was committed 'on or about' a certain day does not show but
the action is barred by the lapse of time."

Consulting the Criminal Code of Oregon, to which Judge
Deady refers, we find that section 70 gives a form of indictment
in which the required allegation of time is set out in the follow-
ing words: "The said A. B., on the —— day of ——,
18—." As Judge Deady says, the form indicates an absolute
averment as to the time of committing the offense. But, on
the contrary, the statute of this State does seem to change the
common-law rule. Instead of indicating an absolute averment
of time, it says that the precise time need not be stated.

Appellant cites *Roberts* v. *State,* 19 Ala. 526. But in that
case the indictment stated no time whatever. The same is true
in *Irvin* v. *State,* 13 Mo. 306. *People* v. *Lafuente,* 6 Cal. 202,
presented by appellant as authority, simply holds that "a par-
ticular day having been laid on which the offense is charged to
have been committed anterior to the finding of the indictment,
there is no necessity for an averment that the crime was com-
mitted before the bringing of the indictment." Another case
is *State* v. *Hanson,* 39 Me. 337, wherein the averment of the
indictment was that the defendant appeared before the court,
during a certain term named, and there made false answers,
without stating any month, or day of the month during that
term, when those answers were made. The prosecution was for
perjury, and the indictment was held to be defective in not stat-
ing time.

We have referred to these cases which appellant has pressed
upon our consideration as authority for his position that the

allegation "on or about" is insufficient, in order to show that none of them are in point upon the construction of our statute. (§ 166, Crim. Prac. Act.)

On the other hand, there is satisfactory authority construing statutes similar to ours, to the effect that the words "on or about" are sufficient. Counsel might have gone further in Archibald's Criminal Pleading and Practice, page 278, where that author says: "But now, by stat. 14 & 15 Vict. c. 100, section 24, no indictment for any offense shall be holden insufficient 'for omitting to state the time at which the offense was committed, in any case where time is not of the essence of the offense,' etc." It appears that even in the birthplace of the common law, the rigors of its construction have been modified. Mr. Wharton, whom appellant cites as holding the position which he advocates, says in a later section of the same work, section 266, that the words "on or about" were held to be surplusage, and refers to Indiana cases construing a statute similar to ours, which cases we cite further on. Mr. Bishop (Criminal Practice, § 242) says: "Where the time is set down as 'on or about' the day mentioned, the allegation is insufficient. Yet in some of the States there are statutes by force of which this form becomes adequate," citing *Cokely* v. *State*, 4 Iowa, 477; *People* v. *Aro*, 6 Cal. 207; 65 Am. Dec. 503; *Hampton* v. *State*, 8 Ind. 336; *Hardebeck* v. *State*, 10 Ind. 459.

In the case at bar it is not contended that time is an indispensable ingredient of the offense. The matter is as well put in *Hampton* v. *State*, 8 Ind. 336, as in any other case, where the statute construed is practically identical with that of this State. This case is approved in *Farrell* v. *State*, 45 Ind. 373. To the same effect see *People* v. *Littlefield*, 5 Cal. 355, and *State* v. *Harp*, 31 Kan. 498, in which are collected the following cases, which we have examined with satisfaction: *State* v. *Tuller*, 34 Conn. 280; *People* v. *Kelly*, 6 Cal. 210; *State* v. *Elliot*, 34 Tex. 148, and other cases above cited. In *Rawson* v. *State*, 19 Conn. 291, is an instructive discussion of the strictness of the common law in construing indictments, and the reason for the modern modification for that strictness.

In point at this place is section 171 of the Criminal Practice Act, which provides: "No indictment shall be quashed or set

aside for any of the following defects," among others; "for any surplusage or repugnant allegation, where there is sufficient matter alleged to indicate the crime and person charged, or for any other defect or imperfection which does not tend to the prejudice of the substantial rights of the defendant, upon the merits."

We fully agree with the cases which have construed statutes similar to our sections 166 and 171, and are of the opinion that any other view than that the words "on or about" a certain day do not vitiate the indictment, would be to declare that those statutes are idle and meaningless words.

2d. It is contended that the court erred in not holding, as a matter of law without submitting it to the jury, that the name "Ellen Souderland," as found in the indictment, was not *idem sonans* with the name of the injured person as proved on the trial.

We understand, from a review of the authorities, that the rule is, that if the question of *idem sonans* arises on demurrer, it is for the court, but if on an issue of fact, it is for the jury. "The question of whether one name is *idem sonans* with another is not a question of spelling, but of pronunciation, depending less upon rule than upon usage, which, when it arises in evidence on the general issue, is for the jury and not for the court, and was rightly submitted to the jury in this case." (*Commonw.* v. *Donovan*, 13 Allen, 571.) In *Commonw.* v. *Warren*, a very recent case in the same court, 143 Mass. 568, we find the following language: "The province of the court and jury in cases like the present is governed by the following rule: If two names, spelled differently, necessarily sound alike, the court may, as matter of law, pronounce them to be *idem sonans;* but if they do not necessarily sound alike, the question whether they are *idem sonans* is a question of fact for the jury," citing cases. So it would seem from this case, that if the names are necessarily pronounced in a certain manner, and there cannot possibly be any doubt as to their pronunciation, the question is one for the court. But where it is a question of fact, whether the names under consideration are *idem sonans,* and the matter arises on the issue, the question is for the jury. (See Wharton's Criminal Evidence, 96; Wharton's American Criminal Law,

597; Wharton's Criminal Pleading and Practice, 119; *Ward* v. *State*, 28 Ala. 53; *Barnes* v. *People*, 18 Ill. 52; 65 Am. Dec. 699; *Commonw.* v. *Mehan*, 11 Gray, 321; *Commonw.* v. *Jennings*, 121 Mass. 47; 23 Am. Rep. 249; *State* v. *Malia*, 79 Me. 540; *Underwood* v. *State*, 72 Ala. 220; *Schooler* v. *Asherst*, 1 Litt. 216; 13 Am Dec. 232, and note; *Donnel* v. *United States*, 1 Morris, 141; 39 Am. Dec. 457; *State* v. *Havely*, 21 Mo. 498; *Lawrence* v. *State*, 59 Ala. 61; *People* v. *Fick*, 89 Cal. 14.)

Now as to the facts in the case at bar. The indictment reads 'Souderland." The witnesses variously describe the woman as "Soderlund," "Saderlund," "Sonderlund," and "Soederland." The person bearing the name was a foreigner, a Swede. The sounds of the same characters, as letters, are widely different in different languages. The witnesses who gave the verbal pronunciations of the name, on the trial, were Swedes, and spoke with marked accents. The sounds which they uttered have not been absolutely preserved in the written record. We have no positive information as to the sounds which they gave to the vowels used in the name. We must rely upon the bill of exceptions which the judge certified who tried the case. From that it appears that the name was repeatedly pronounced. The judge could not say that the name as pronounced was *idem sonans* with the name in the indictment. He says that the difference in sound warranted him in submitting the matter to the jury. This court cannot now hear the sounds. We cannot construct them from the recorded collection of letters, which have different sounds in well-spoken English, to say nothing of Swedishly accented English.

We are of opinion that the question is just such a one as should have gone to the jury, and that the District Court committed no error in so submitting it. Appellant refers us to *State* v. *Sullivan*, 9 Mont. 490. But that case was not decided upon the point made in the case at bar. In *State* v. *Sullivan*, the question of *idem sonans* was not submitted to the jury, and the action of the court in deciding that matter was not objected to or assigned as error.

3d. The plea of former conviction. The appellant to some extent renews the discussion had in the case, *In re Thompson*, 9

Mont. 388, wherein the petitioner was the same person who is herein the appellant. It may be appropriate to observe that in that hearing the petitioner contended that his conviction and imprisonment were illegal, because there had been no trial. Now he insists that the events of that trial were a former jeopardy. If a conviction, it must have been a trial. But we will not go into the events of that trial. We have not changed our views held on the habeas corpus hearing, which were that the petitioner there, the appellant here, had a trial. Whatever irregularities there occurred we did not inquire on the hearing of the writ. But it appears that the District Court took notice of the events on that trial, with the result that it granted defendant a new trial. Therefore the only proposition now before this court is whether a defendant once convicted, and obtaining a new trial, on his own motion, can plead the former conviction in bar to the second trial, which he has obtained.

The Constitution says that he shall not be twice put in jeopardy for the same offense. The statute declares that if a new trial be granted, he shall be in the same position as if no trial had ever been had. This constitutional and statutory provision is common to most of the States of the Union. The cases cited by appellant of discharge of a jury after the trial is commenced, and before completed, for reasons within or without the control of the court, on motion of the prosecutor or of the court's own motion, are not in point in this investigation.

Again, the question of the conviction of a less degree of a graded crime being a bar to prosecution for the higher degree, is not in this case, and the authorities are not in point.

The real point in this appeal was summarily dismissed in *Territory* v. *Hart,* 7 Mont. 496. But the zeal and earnestness of counsel induce us to add a few of the innumerable authorities from other courts (*People* v. *Webb,* 38 Cal. 480; *Jones* v. *Commonw.* 20 Gratt. 848; *People* v. *Gilmore,* 4 Cal. 376; 60 Am. Dec. 620; *People* v. *March,* 6 Cal. 546; *People* v. *Olwell,* 28 Cal. 462; *People* v. *Barrie,* 49 Cal. 342; *People* v. *Hardisson,* 61 Cal. 379; *People* v. *Schmidt,* 64 Cal. 263; *People* v. *Travers,* 73 Cal. 580; *State* v. *Rover,* 10 Nev. 388; 21 Am. Rep. 745; *State* v. *Knouse,* 33 Iowa, 368; *Johnson* v. *State,* 29 Ark. 31; 21 Am. Rep. 154; *Jones* v. *State,* 55 Ga. 625; *Lewis* v. *State,*

1 Tex. App. 323; *Stuart* v. *Commonw.* 28 Gratt. 950; *Veatch* v. *State,* 60 Ind. 291; *Smith* v. *State,* 41 N. J. L. 598; *State* v. *Stephens,* 13 S. C. 285; *Simco* v. *State,* 9 Tex. App. 338; *Kendall* v. *State,* 65 Ala. 492; *State* v. *Blaisdell,* 59 N. H. 328; *State* v. *Hart,* 33 Kan. 218; *Hohanan* v. *State,* 18 Neb. 57; *State* v. *Anderson,* 89 Mo. 312; *People* v. *Palmer,* 109 N. Y. 413; *Younger* v. *State,* 2 W. Va. 579; 98 Am. Dec. 791); which are some of the cases which the industry of the county attorney has presented for our consideration, and we find laying down the principle as common learning and undisputed law. We do not consider the proposition as one open to discussion, and hold that the District Court committed no error.

The judgment is affirmed, and it is ordered that it be carried into effect as adjudged by the lower court.

BLAKE, C. J., and HARWOOD, J., concur.