No. 14421

IN THE SUPREME COURT OF THE STATE OF MONTANA

1979

---

THE STATE OF MONTANA,

Plaintiff and Respondent,

-vs-

TRAVIS HOLLIDAY,

Defendant and Appellant.

---

Appeal from: District Court of the Thirteenth Judicial District,
Hon. Charles Luedke, Judge presiding.

Counsel of Record:

For Appellant:

Reno and Dolve, Billings, Montana
James A. Reno argued, Billings, Montana

For Respondent:

Hon. Mike Greely, Attorney General, Helena, Montana
Mary B. Troland, Assistant Attorney General, argued and
Marc Racicot, Assistant Attorney General, appeared,
 Helena, Montana
James Seykora, County Attorney, appeared, Hardin, Montana

---

Submitted: April 30, 1979

Decided: AUG 2 0 1979

Filed: AUG 2 0 1979

*Thomas J. Kearney*
Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

The defendant in this matter appeals from a judgment entered on April 3, 1978 by the District Court, Thirteenth Judicial District, Big Horn County, upon a jury verdict of guilty of the crime of robbery.

Defendant was originally tried with three other defendants in October 1975 for the robbery and homicide of Monte Dyckman, a Safeway store employee in Hardin, Montana. The facts surrounding those crimes have been recited in detail by this Court elsewhere. See, State v. Fitzpatrick (1977), ____ Mont. ____, 569 P.2d 383, 34 St.Rep. 736. Therefore, for purposes of this appeal, they need not be exhaustively recounted here.

Briefly, the evidence adduced at defendant's trial demonstrated he and four other individuals met in a Billings bar on April 5, 1975, and discussed robbing the Safeway store in Hardin, Montana. Defendant then accompanied the others to a home on the west side of Billings, where further plans for the robbery were developed. Defendant then requested a ride to Hardin with one of the participants for himself and two female companions. The other men drove to Hardin in a second car.

Arriving in Hardin, the men left the girls at a local bar at defendant's request and then drove around the town to ascertain the location of the Safeway store and the drive-in bank where the store's receipts for that day would most likely be deposited. This accomplished, they returned to the bar, where one of the men, prompted by defendant's remark that they did not have tape to bind the hands or cover the mouths of the intended victim or victims, left to get some rope. When he returned, the group separated, the defendant and two others going in one car, and the remaining two men going in the other. By this time, the evidence showed defendant had obtained a gun.

-2-

The two groups then proceeded to the Safeway store where they intended to wait until the store closed at 10:00 p.m. During this time defendant and one of the occupants of the car cut the rope into pieces which were given to the two men in the other car. When the store closed, the store manager and Monte Dyckman each drove off in his own car, defendant and his companions following Dyckman and the other men following the store manager.

As soon as it became apparent the store manager did not have the deposit of the day's receipts, the men went to the drive-in bank to await the arrival of Monte Dyckman. Defendant and his companions, seeing Dyckman turn into the bank, returned to Billings, defendant remarking the men in the other car would get Dyckman.

Defendant and his companions arrived at the west side Billings house at approximately 2:00 a.m., April 6, 1975 and awaited the arrival of the other two members of the group. Eventually only one returned and indicated the robbery had in fact occurred, but very little money was taken. Monte Dyckman was discovered later that day, shot to death.

On May 20, 1975, the State of Montana filed an information charging the defendant and his four companions with deliberate homicide, aggravated kidnapping, and robbery. A joint trial was held in October 1975, and two of the four defendants finally tried were found guilty of all three counts, while defendant and the remaining participant were found guilty only of the robbery count. Upon appeal, this Court indicated the defendants suffered prejudice from being tried jointly and concluded that the jury had been improperly and inadequately instructed. State v. Fitzpatrick, 569 P.2d at 393, 395. We then reversed and remanded for a new trial as to all defendants. 569 P.2d at 396.

-3-

On November 21, 1977, an amended information was filed charging the defendant with the crime of robbery. A pretrial motion to dismiss asserting defendant was being subjected to double jeopardy was made and denied. At trial, the following was read to the jury prior to the taking of any evidence:

"Counsel of record stipulate and agree that the following factual situation may be presented to the jury without requiring further proof or foundation:

"On or about the late night hours of April 5, 1975, Monte Dyckman, who was then an employee of the Safeway Store of Hardin, Montana was robbed of that store's receipts.

"During the course of said robbery, Monte Dyckman was killed by being shot in the back of the head by a .45 automatic handgun twice after being bound with his hands behind his back.

"At the scene of the homicide approximately 12 miles west of Hardin, Montana, in the area generally known as Toluca Interchange, there were two spent .45 caliber shell casings found on the ground approximately 120 feet to the rear of the Dyckman vehicle, and two spent .45 caliber automatic shell casings found in the Monte Dyckman vehicle.

"On June 27, 1975, a person by the name of Gary Eugene Radi was arrested in connection with the robbery of Monte Dyckman in Rawlins, Wyoming; upon a search of his vehicle under the rear seat portion of said motor vehicle was found a spent .45 caliber shell casing. Upon examination by the Federal Bureau of Investigation Laboratory in Washington, D.C., it was found that the shell casing from the Radi vehicle had been fired by the same gun which fired the shell casings found at the murder scene.

"There have been two previous trials, one against Gary Eugene Radi and another against Bernard James Fitzpatrick. Gary Eugene Radi was found not guilty although Bernard James Fitzpatrick was found guilty of Deliberate Homicide, Aggravated Kidnapping and Robbery. At the Radi trial the witnesses, Cindy Morgan, Iva Lee Finch, Edwin Bushman and Christine Fetters did not testify, although the prior testimony of Finch and Bushman was read into the record."

During the presentation of evidence at defendant's trial, Christine Fetters did testify and related to a particular conversation which took place in her presence between the individuals involved in the robbery/homicide. The conversation concerned the alleged events of April 5, 1975. She said, when

-4-

asked if one of the parties to the incidents of that date (Radi) said anything else about the alleged crime, "About the only other thing that I can really recall was that he said, 'The crazy son-of-a-bitch [Fitzpatrick] blew his [Dyckman's] head off.'" Defense counsel immediately objected, whereupon the trial judge and counsel retired to chambers. In chambers, defense counsel moved for a mistrial and the motion was denied. Defense counsel renewed his objection at the close of the State's evidence and the motion was again denied.

Defendant was subsequently convicted of robbery and sentenced to a term of forty years in the State Prison.

The defendant makes three basic claims in this appeal. First, he argues that his retrial on the robbery count has placed him in double jeopardy contrary to federal and state constitutional inhibitions. Second, he argues the testimony of Christine Fetters regarding Gary Radi's statement was so prejudicial that the District Court's denial of a mistrial was reversible error. Finally, defendant contends the evidence does not sufficiently corroborate the testimony of one of the participants in the activities of April 5, 1975, Edwin "Luke" Bushman.

The question posed by defendant's first claim has been presented to this Court and answered in defendant's first appeal, State v. Fitzpatrick, 569 P.2d at 395. The issue as framed in that appeal was whether the conviction of defendant should be reversed and the charges against him dismissed on the grounds that the jury was inadequately instructed on the applicable law and returned inconsistent verdicts. 569 P.2d at 387. In arguing for dismissal, defendant in that appeal asserted the jury verdict that defendant was not guilty of deliberate homicide, and aggravated kidnapping also meant the

-5-

jury was finding the defendant was not guilty of robbery. Defendant based this contention, there as here, upon the ground that the State had proceeded to prosecute under the felony murder rule and under that theory, robbery was a necessary element of the other two crimes. We rejected defendant's requested relief of remand and dismissal and instead remanded for a new trial. 569 P.2d at 396.

By asking, in this appeal, to construe the verdicts as acquittal on all counts, thus barring retrial on double jeopardy considerations, defendant is presenting in essence the same issue we have previously decided. The difference in the two arguments is superficial, not substantive. It is well established in Montana that where a decision has been reached by this Court on a particular issue between the same parties in the same case such decision is binding on the parties and courts, and cannot be relitigated in a subsequent appeal, subject to certain exceptions not pertinent here. Belgrade State Bank v. Swainson (1978), _____ Mont. _____, 578 P.2d 1166, 1167, 35 St.Rep. 549; State v. Zimmerman (1977), _____ Mont. _____, 573 P.2d 174, 177, 34 St.Rep. 1561; see also State v. Coleman (1979), _____ Mont. _____, ____ P.2d _____, 36 St.Rep. 1134, (No. 14448, decided June 20, 1979). The defendant is bound by our previous determination that defendant is not entitled to a dismissal of all charges.

The defendant is thus in the position of a defendant in a criminal proceeding who has had a judgment of conviction reversed on appeal for errors in the proceedings. In such a case, it is well established a retrial does not constitute double jeopardy. United States v. Ball (1896), 163 U.S. 662, 16 S.Ct. 1192, 41 L.Ed 300; Green v. United States (1957), 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199; State v. Ellsworth (1962), 141 Mont.

-6-

78, 375 P.2d 316. This includes a reversal for errors in the instructions. United States v. Tateo (1964), 377 U.S. 463, 84 S.Ct. 1587, 12 L.Ed.2d 448; Forman v. United States (1960), 361 U.S. 416, 80 S.Ct. 481, 4 L.Ed.2d 412.

Defendant next claims the testimony of Christine Fetters, given the stipulation concerning the crime involved, was clearly irrelevant and prejudicial, and should have resulted in a mistrial. Defendant places reliance upon this Court's decision in State v. Williams (1977), ___ Mont. _____, 570 P.2d 578, 34 St.Rep. 1116, declaring the admission of prejudicial and irrelevant evidence is a cause for mistrial. In Williams, the admitted evidence was clearly irrelevant--it indicated the defendant's involvement in a drug sale and resulting debt, such debt later giving rise to an altercation leading to defendant being charged with intimidation. 570 P.2d at 579. Clearly, the fact of the drug sale had no probative value as to the fact of intimidation and thus was not relevant.

In the present case the testimony of Christine Fetters concerning Gary Radi's statement was relevant for impeachment purposes. Radi had testified in defendant's trial denying any involvement in the commission of the crime. Edwin Bushman, the prosecution's main witness, testified Radi was a participant in the crime. Thus the credibility of both Radi and Bushman was at issue and Fetters' statement impeached the credibility of Radi. As such, the statement was relevant and therefore admissible. Rule 401, Mont.R.Evid.

Moreover, it does not appear to be so prejudicial as to warrant a new trial. The basis for determining whether an erroneous admission of testimony constitutes justification for reversal is a showing by defendant that prejudice resulted from the testimony and that his substantial rights were thereby

-7-

affected. State v. Bentley (1970), 155 Mont. 383, 472 P.2d 864, 875; State v. Hay (1948), 120 Mont. 573, 194 P.2d 232, 237; section 46-20-702 MCA. In this case, a stipulation was read to the jury stating the nature of the crime committed and the disposition of other prosecutions stemming from that crime. It clearly indicated a murder had taken place and that Bernard James Fitzpatrick was convicted of that crime. Following the motion for mistrial, the District Court ordered that no further references to the murder of Monte Dyckman should be made. No further testimony on that subject occurred. Finally Christine Fetters was thoroughly cross-examined and indicated she had the impression defendant was not involved in the murder.

Unlike the situation involved in Williams, supra, where the jury had no hint that a drug sale was involved until the offending testimony was uttered, here the jury knew murder had been committed and who had been convicted for it. Defendant has not met his burden of affirmatively showing prejudice. State v. Walker (1966), 148 Mont. 216, 419 P.2d 300, 304. Without such a showing, the denial of a mistrial does not constitute reversible error. See, State v. LaVe (1977), ____ Mont. ____, 571 P.2d 97, 34 St.Rep. 1298.

Defendant finally claims that there is absolutely no corroborating evidence of any nature of Bushman's testimony, meeting the standards set by this Court and the statutes. Section 46-16-213 MCA provides:

> "A conviction cannot be had on the testimony of one responsible or legally accountable for the same offense,. . . unless the testimony is corroborated by other evidence which in itself and without the aid of the testimony of the one responsible or legally accountable for the same offense tends to connect the defendant with

-8-

the commission of the offense. The corroboration
is not sufficient if it merely shows the commission
of the offense or the circumstances thereof."

This Court in State v. Cobb (1926), 76 Mont. 89, 245
P. 265, 266, set forth the general rules for evaluating corroboration of accomplice testimony:

"(a) The corroborating evidence may be supplied
by the defendant or his witnesses.

"(b) It need not be direct evidence--it may be
circumstantial.

"(c) It need not extend to every fact to which
the accomplice testifies.

"(d) It need not be sufficient to justify a
conviction or to establish a prima facie case
of guilty.

"(e) It need not be sufficient to connect the
defendant with the commission of the crime; it
is sufficient if it tends to do so.

"(f) Whether the corroborating evidence tends
to connect the defendant with the commission of
the offense is a question of law, but the weight
of the evidence--its efficacy to fortify the
testimony of the accomplice and render his story
trustworthy--is a matter for the consideration
of the jury."

The corroborating evidence must show more than a mere opportunity to commit the crime. State v. Coleman (1978), _____ Mont. _____, 579 P.2d 732, 35 St.Rep. 560.

In his first appeal defendant also challenged the sufficiency of the corroborating evidence. State v. Fitzpatrick, 569 P.2d at 393. This Court held that the testimony of Iva Lee Finch, Cindy Morgan, Carol Braach, Raleigh Kraft, Jr., Ronald Potts, and Lyle Doane sufficiently corroborated the testimony of Edwin Bushman. 569 P.2d at 394. In defendant's retrial, the same individuals gave essentially the same testimony as in the first trial. In addition, Christine Fetters testified defendant had asked Fitzpatrick in early April if he would like to make some money. Fetters also testified to conversation between Gary Radi and defendant concerning the robbery.

-9-

The total sum of the corroborating testimony does more than merely show an opportunity to commit the crime and satisfies the requirements of Cobb.

The judgment of the District Court is affirmed.

_____
                    Justice

We Concur:

_____
        Chief Justice


_____


_____
                 Justices