No. 14661

IN THE SUPREME COURT OF THE STATE OF MONTANA

1979

---

STATE OF MONTANA,

        Plaintiff and Respondent,

  -vs-

THOMAS L. HODGSON,

        Defendant and Appellant.

---

Appeal from: District Court of the Thirteenth Judicial District,
        Honorable Charles Luedke, Judge presiding.

Counsel of Record:

    For Appellant:

        John L. Adams argued, Billings, Montana

    For Respondent:

        Hon. Mike Greely, Attorney General, Helena, Montana
        Chris Tweeten argued, Assistant Attorney General, Helena, Montana
        Harold Hanser, County Attorney, Billings, Montana
        James Whalen argued, Deputy County Attorney, Billings, Montana

---

Submitted: June 11, 1979

Decided: NOV 2 8 1979

Filed: NOV 2 8 1979

Thomas J. Kearney
                  Clerk

Mr. Justice Daniel J. Shea delivered the Opinion of the Court.

Defendant appeals his conviction in the Yellowstone County District Court for the crime of deviate sexual conduct. He raises three issues: double jeopardy, denial of a speedy trial, and inadmissibility of his confession.

The double jeopardy claim and speedy trial claim arise out of an unusual, if not unique, set of circumstances. Defendant was initially convicted on May 23, 1978 of the crime, but was prevented from taking a meaningful appeal because the court reporter lost the notes of the first trial, thus preventing the preparation of a verbatim transcript. For this reason, the trial court granted a new trial to defendant, and defendant accepted this new trial order without objection. Defendant was again convicted, and he was sentenced to twenty years in prison, the same sentence he had received after the first conviction.

Defendant now contends that the second trial resulted in double jeopardy, and furthermore, that the time lapse between his arrest and the second trial, approximately ten months, denied him a speedy trial. He also claims that a confession he had given to police immediately before he was arrested, was inadmissible because it was obtained against his will.

The underlying facts to defendant's prosecution and conviction for deviate sexual conduct occurred while defendant was babysitting a four-year old male child. The parents were in California on a four day trip. When the parents returned home on the evening of December 22, 1977, the child informed his mother that his buttocks hurt, and stated that "Tom stuck his peep in it. . ." Later that evening, Dr. Stephen Elliott, M.D., discovered a bruise in the boy's rectal area which in his opinion was caused by a penetrating object. The police

were then notified, and three officers were sent to defendant's home.

They arrived at approximately 10:00 p.m. that evening, and defendant was in bed. Defendant invited the officers into his home. They informed defendant that they were investigating the sexual assault of the boy and asked if the defendant was willing to go downtown for questioning. Defendant agreed, and he changed clothes and accompanied the police to the stationhouse. After being advised of his rights, defendant admitted that he had sexually assaulted the boy and signed a written confession to that effect. Shortly thereafter he was arrested and placed in the county jail.

Before the first trial, defendant moved to suppress his confession. He testified at the hearing that he voluntarily gave his confession. He did not contend then that he had been arrested before he made his confession. He also testified that the police requested rather than demanded that he accompany them to the police station for questioning. He agreed that the police were courteous to him at all times and that he was not frightened by being in their presence. The evidence is clear, moreover, that defendant was not restrained at the police station and that he was free to leave at anytime. Defendant was placed under arrest only after he had confessed. The trial court denied the motion to suppress, and trial started and was concluded on May 23, 1978.

Defendant was later given a 20 year prison sentence. While in the process of preparing for an appeal, it was discovered that the court reporter had lost his notes of the first trial, thus preventing the preparation of a verbatim record of the trial testimony. For this reason, in an effort to protect the rights of the defendant, on September 27, 1978, the District

Court granted a new trial to defendant. In the same order, the court set a new trial date of October 24, 1978.

Defendant did not object to this order granting a new trial; nor did he object to the new trial date setting. When defendant's confession was admitted, defendant simply objected for the reason that it had been taken against his will--that is, that he had actually been under arrest at the time he gave his confession. After all the evidence was presented from both sides, defendant moved to dismiss the case based on his claim of double jeopardy, which motion was denied. Defendant was again convicted, and sentenced to 20 years in prison.

Defendant now contends that his claim of double jeopardy stood as a bar to a valid second trial and conviction. He also claims that since his confession was taken against his will, it should have been excluded, and absent such confession, he was entitled to a dismissal because there was insufficient evidence to go to a jury. He did not raise the speedy trial issue before District Court, but contends before this Court that the ten month time lapse between his arrest and the second trial denied him his right to a speedy trial.

At no time did defendant oppose the order of the District Court granting him a new trial because of the lost trial notes. If he felt at that time that a retrial, rather than appeal from the first conviction, was against his interest, he had available to him procedures under section 46-20-304(1), MCA, albeit not totally sufficient, to appeal without benefit of an actual verbatim transcript. But he chose not to use this procedure and instead to gamble that upon a second trial he would be acquitted. We see no valid double jeopardy claim under these circumstances.

A defendant who obtains a new trial after appealing the original judgment cannot complain of double jeopardy. State v. Holliday (1979), ____ Mont. ____, 598 P.2d 1132, 36 St.Rep. 1535; United States v. Starling (5th Cir. 1978), 571 F.2d 934. There is no difference when the trial court grants a new trial to the defendant. State v. Thompson (1891), 10 Mont. 549, 552, 27 P. 349.

Here, the trial court ordered a new trial after it had been concluded. Other than granting a new trial, the only reasonable alternative available to the trial court, was to order an appeal through the use of a bystander's bill as permitted by section 46-20-304(1), MCA, supra. The trial court did not consider a bystander's bill as a meaningful alternative, and neither did the defendant, for he accepted instead, the benefits of an order for a new trial. Defendant never did contend that he should be permitted to reconstruct the testimony of the first trial and present his appeal based upon this reconstructed record.

The order for a new trial was solely for defendant's benefit. As stated in Houp v. State of Nebraska (8th Cir. 1970), 427 F.2d 254; and Crawford v. United States (D.C. Cir. 1960), 285 F.2d 661, even after the jury has entered its verdict, the trial court has discretion to determine that the burden placed upon a defendant by a second trial must be subordinated to the public's interest in a just judgment. There could be no just judgment here without permitting the defendant to have an adequate trial record upon which to conduct an appeal, and that is why the trial court granted the new trial. The trial court averted a potential injustice to defendant by not compelling him to undertake an appeal upon an incomplete and inadequate trial record. This was the just and proper action to take.

-5-

The defendant's claim that he was denied a speedy trial under these circumstances, is specious, to say the least. Although ten months passed between defendant's arrest and the beginning of the second trial, the State cannot be charged with any significant time lapses. Upon defendant's request, the court ordered a psychiatric exam, and defendant did not file the results of his examination until three and a half months later on May 2, 1978. The intervening time period after the first conviction and the new trial order of September 27, 1978, was not, of course, time that can be charged to defendant. But defendant cannot attach any meaningful speedy trial significance to this period, for he had already been tried. The court and parties were primarily concerned during this period as to what action to take because of the negligence of the court reporter in losing the trial notes.

On September 27, 1978, the trial court concluded that in all justice to defendant, a new trial must be ordered. Defendant accepted the benefits of this new trial order and makes no specific complaint as to the time lapse between September 27, 1978 and the start of his second trial, on October 24, 1978, less than a month. Defendant has shown us no prejudice whatsoever, and we see none.

We have already discussed the evidence concerning defendant's contention that his confession was the product of an illegal arrest. Defendant himself, however, has admitted that he was not first arrested, and that the confession was not taken against his will. We find no violation of his constitutional rights under these facts.

Based upon the defendant's confession and the testimony corroborating the complaint of the small boy, the State met its substantial evidence burden to sustain the conviction.

The judgment of conviction is affirmed.

_Daniel J. Shea_
Justice

-6-

We Concur:

_Frank I. Haswell_
Chief Justice

_Gene B. Daly_

_John Conway Harrison_

_John C. Sheehy_
Justices