# FORMAN *v.* UNITED STATES.

No. 43.   Argued November 19, 1959.—Decided February 23, 1960.

*Solomon J. Bischoff* argued the cause for petitioner. With him on the brief was *George W. Mead.*

*Abbott M. Sellers* argued the cause for the United States. On the brief were *Solicitor General Rankin, Assistant Attorney General Rice* and *Meyer Rothwacks.*

MR. JUSTICE CLARK delivered the opinion of the Court.

In this criminal conspiracy case, petitioner raises questions of double jeopardy. Petitioner and one Seijas, his former partner in the pinball business, were convicted[1] of conspiracy to commit the offense of willfully attempting to evade the individual income taxes of Seijas and his wife, in violation of § 145 (b) of the Internal Revenue Code of 1939,[2] and of furnishing false books, records, and financial statements to officers and employees of the Treasury Department for the purpose of concealing the true income tax liabilities of Seijas and his wife, in violation of 18 U. S. C. § 1001.[3] The trial was prior to our

---

[1] Seijas pleaded guilty and testified for the Government.

[2] "SEC. 145. Penalties. . . . (b) *Failure to Collect and Pay Over Tax, or Attempt to Defeat or Evade Tax.*—Any person required under this chapter to collect, account for, and pay over any tax imposed by this chapter, who willfully fails to collect or truthfully account for and pay over such tax, and any person who willfully attempts in any manner to evade or defeat any tax imposed by this chapter or the payment thereof, shall, in addition to other penalties provided by law, be guilty of a felony and, upon conviction thereof, be fined not more than $10,000, or imprisoned for not more than five years, or both, together with the costs of prosecution."

[3] "SEC. 1001. STATEMENTS OR ENTRIES GENERALLY. Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both."

decision in *Grunewald* v. *United States*, 353 U. S. 391 (1957). The petitioner requested, and the trial judge included in his charge, language similar to that given in the charge in the *Grunewald* prosecution directing that petitioner should be acquitted unless the jury found that the partners entered into a subsidiary conspiracy, continuing to within six years of the indictment, to conceal their conspiracy to attempt to evade Seijas' and his wife's taxes. At the time of the appeal, our *Grunewald* opinion had come down. Citing *Grunewald*, the Court of Appeals reversed petitioner's conviction and remanded the case with instructions to enter a judgment of acquittal. 259 F. 2d 128. On rehearing, however, the Court of Appeals decided that "the case might have been tried" on an "alternative theory," namely, that "certain of the overt acts listed in the indictment and charged to have occurred in 1948, 1951 and 1952, involving false statements, could well have been in furtherance of and during a conspiracy having as its objective not the concealment of the conspirators' conspiracy but tax evasion." 261 F. 2d 181, 183. It modified its original order for an acquittal and entered one directing a new trial. Petitioner then contended that having once ordered his acquittal, the Court of Appeals, by directing a new trial, violated the command of the Fifth Amendment that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." Petitioner's motion for rehearing was denied. 264 F. 2d 955. We granted certiorari. 359 U. S. 982. We affirm the order directing a new trial.

The facts are detailed in the original opinion of the Court of Appeals, 259 F. 2d 128, and it is sufficient here merely to summarize them. In 1941 petitioner and Seijas, a lawyer, formed a partnership to engage in the operation of pinball machines in Kitsap County, Washington. Receipts, less expenses, from the individual machines, were to be divided equally between the partners

and the location owners. Beginning in 1942 and con-
tinuing until December 1945, however, the partners
robbed the machines by extracting "holdout" money from
those located at the more profitable locations. These
sums, without being split with the location owners, were
divided between the partners. None of these amounts
were entered on the books of the partnership, nor were
they included in its tax returns. Seijas maintained
diaries and kept a record of the amount of "holdout"
income that he received, but he paid no tax on it. Dur-
ing this period, tax returns omitting the "holdout"
income were filed each year. The Court of Appeals found
that "there was abundant proof" of petitioner's participa-
tion in a conspiracy to "evade Seijas' income taxes for the
years 1942 through 1945" through concealment of the
"holdout" income during that period. It also found that
"numerous false statements" were made by both Forman
and Seijas in furtherance of this conspiracy and within the
six-year period immediately prior to the indictment. The
record shows, as the Court of Appeals indicated, that
the concealment of the "holdout" income continued until
soon before the indictment, at which time Seijas turned
over to the agents his diaries covering the receipt of this
income for the years 1942–1945. The Court of Appeals,
on the original submission, however, found that the case
was submitted to the jury on the theory of *Grunewald* as
expounded in 233 F. 2d 556, namely, that a subsidiary
conspiracy to conceal the main conspiracy to attempt to
evade Seijas' tax may be implied from circumstantial
evidence showing that the latter conspiracy was kept a
secret. This subsidiary conspiracy would make the prose-
cution timely under the applicable statute of limitations.
But the Court of Appeals pointed out that the reversal
of that case by this Court soon after the trial of petitioner
gave it "an advantage . . . that the trial court did not
have" and required the conviction to be reversed and the

case remanded "with directions to enter judgment for the appellant" Forman.

On rehearing,[4] as here, the Government contended that the essence of the conspiracy charged in the indictment filed November 19, 1953, was to evade the tax on the "holdout" income and that at least five overt acts were committed within six years of the return of the indictment for the purpose of furthering that conspiracy to evade. Contrary to what the trial court found, the Government said that the conspiracy did not end with the filing of the false income tax returns in the years 1943 through 1946, but embraced the subsequent efforts, made during the years 1947 through 1952, to evade those taxes. The only flaw in the record to the contrary, it claimed, was the erroneous "subsidiary conspiracy" instruction, which it now points out was injected therein by the petitioner himself. The Government concluded that the interests of justice required the entry of an order directing a new trial rather than a judgment of acquittal. Although finding that the Government conceded "that the case was submitted to the jury on an impermissible theory," the Court of Appeals read the indictment as alleging that the conspiracy was one " 'to violate . . . § 145 (b) of the Internal Revenue Code . . . by furnishing officers and employees of the Revenue Department false books and records and false financial statements, and by making false statements to such officers and employees, for the purpose of concealing from the Treasury Department their share of the unreported [holdout] income . . . and for the purpose of concealing . . . the

---

[4] Although petitioner contends that the petition for rehearing was in fact a motion for a new trial, this is not true. The purpose of a petition for rehearing is to point out error in the original judgment. Here the Government pointed out that the Court of Appeals applied the wrong theory (the *Grunewald* theory instead of the continuing conspiracy theory).

true income tax liability of Amador A. Seijas.'" 261 F. 2d, at 182. It held that "the conspiracy continued past the filing of the returns" and "that certain of the overt acts listed in the indictment and charged to have occurred in 1948, 1951 and 1952, involving false statements, could well have been in furtherance of and during a conspiracy having for its objective not the concealment of the conspirators' conspiracy but tax evasion." *Id.*, at 183. It, therefore, modified its opinion "so as to provide that the judgment is reversed and the cause remanded for a new trial." *Ibid.* The petitioner then raised his plea of former jeopardy, which is the basis of his petition here. He says that the trial court correctly found that the conspiracy ended with the filing of the last false income tax return in 1946. Since there was no direct evidence of the existence of a subsidiary conspiracy to conceal the crime of attempting to evade, the trial court, he concludes, should have sustained his motion to acquit on that ground. When the Court of Appeals held that the trial court erred in failing to grant the motion, petitioner argues that it gave him a vested right to an acquittal, which matured at the time he so moved in the trial court. A new trial, he contends, would therefore place him in double jeopardy.[5]

---

[5] Petitioner also argues that there is insufficient evidence in the record to support a conviction based upon the "alternative theory." He urges that *Grunewald* established that, regardless of the nature of the charge, there must be *"direct* evidence . . . to show . . . *an express original agreement* among the conspirators to continue to act in concert in order to cover up, for their own self-protection, traces of the crime after its commission." 353 U. S., at 404. (Emphasis supplied.) This statement, however, had reference to a subsidiary conspiracy to conceal, not to a continuing one. In *Grunewald* we were not required to decide whether a conviction under a proper charge could be supported where the only evidence during the period within the statute of limitations was independent acts of concealment, since more was present there. See 353 U. S., at 409, n. 23. Nor is that necessary here, since the Court of Appeals' determination that

The Government now says that through "inadvertence" it allowed the case to be submitted to the jury on the "impermissible theory" condemned in our *Grunewald* opinion, 353 U. S., at 399–406; and that the trial judge was led into error by the request of the petitioner for an instruction on the "subsidiary conspiracy" theory, which error was compounded by the failure of the Government to object thereto. This resulted, it maintains, in a *Grunewald* instruction being saddled onto a correct charge. In view of this complication, it concludes that the jury might well have based its conviction on either theory, and a new trial was therefore appropriate and would not place petitioner in double jeopardy.

## I.

We believe that there was a misconstruction of the scope of the alleged conspiracy and its duration in both *Grunewald* and the present case. In *Grunewald* the indictment charged a conspiracy "to fix" criminal tax cases and to conceal the acts of the conspirators. That case was submitted to the jury on the theory that "the indictment alleges that the conspiracy comprehended within it a conspiracy to conceal the true facts from investigation . . . ." Did the conspiracy end when the "no prosecution" rulings were issued, the Court charged, "or was a part of the conspiracy a continuing agreement to conceal the acts done pursuant thereto?" The effect of the charge was that if there was such a continuing agreement, then the prosecution was timely. It appeared to us that the case should have been submitted to the jury on

the evidence of record could sustain a conviction under a correct instruction was based upon evidence in addition to independent acts of concealment. See 259 F. 2d, at 132–134, and 261 F. 2d, at 183. We cannot say that this determination was erroneous.

the theory that the central object of the conspiracy was not merely to obtain the "no prosecution" rulings, but rather to immunize the taxpayers completely from prosecution for tax evasion. The evidence supported such a theory. We said, however, that, since this theory was not adequately submitted to the jury, the case should be remanded for a new trial rather than affirmed.

In petitioner's case the indictment charged him and Seijas with conspiracy, extending from 1942 to 1953, to attempt to evade the income taxes of Seijas and his wife for the period 1942–1945. Unlike *Grunewald*, the indictment did not allege that one of the objects of the conspiracy was to conceal the acts of the conspirators. The indictment specifically alleged that the conspiracy extended from 1942 to 1953 and, of the 33 overt acts charged, some were committed as late as 1953, the year of the indictment. This language, it must be admitted, certainly lends strong support to the Government's theory of the case. The petitioner says that the theory on which the case was submitted to the jury was that the conspiracy to attempt to evade the taxes "was consummated" when the income tax returns for 1945 were filed and that, unless the jury found "a subsidiary conspiracy" to conceal the conspiracy to attempt to evade the taxes, the "verdict would have to be not guilty." That was the theory he requested, but the charge differs little from the *Grunewald* one. In fact it appears to have been patterned after the *Grunewald* charge. The correct theory, we believe, was indicated by the indictment, *i. e.*, that the conspiracy was a continuing one extending from 1942 to 1953 and its principal object was to evade the taxes of Seijas and his wife for 1942–1945, inclusive, by concealing their "holdout" income. This object was not attained when the tax returns for 1945 concealing the "holdout" income were filed. As was said in *Grunewald*, this was but the first

step in the process of evasion. The concealment of the "holdout" income must continue if the evasion is to succeed. It must continue until action thereon is barred and the evasion permanently effected. In this regard, the indictment alleged that the conspiracy to attempt such evasion actually did continue until 1953, when Seijas revealed the "holdout" income for the first time. It therefore appears that the "subsidiary conspiracy" theory covered by petitioner's requested charge had no place in the case and should not have been given. There was no such conspiracy alleged or proven. In view of the possible confusion resulting, it was entirely appropriate for a new trial to be ordered. Petitioner's raising this ground on appeal, rather than specifically asserting it in his motion for new trial, had no effect on the power of the Court of Appeals to correct the error.

Petitioner insists, however, that the fatal difference between the *Grunewald* charge and the one here is that here the "alternative theory" was not submitted to the jury. Even if we agreed with this point, we do not believe that it would be relevant to our conclusion. The indictment was based on one continuing conspiracy to evade Seijas' tax. The evidence supported it and, if the petitioner had not injected the infected language into the charge, this clearly would have been the theory submitted to the jury. Its inclusion did make the charge ambiguous and the Court of Appeals, having power to direct "such further proceedings to be had as may be just under the circumstances," believed a new trial "appropriate," 28 U. S. C. § 2106, and so ordered. Petitioner concedes that this would have been appropriate if such action had been taken by the Court of Appeals upon original submission; but he says that, once having ordered the entry of an acquittal judgment, it lost power to amend that direction on rehearing and order a new trial. This would subject him, he says, to double jeopardy. We think not.

## II.

It is elementary in our law that a person can be tried a second time for an offense when his prior conviction for that same offense has been set aside by his appeal. *United States* v. *Ball,* 163 U. S. 662, 672 (1896). See also *Green* v. *United States,* 355 U. S. 184, 189 (1957), which expressly affirmed the principle of the *Ball* case. Petitioner says that he does not come under that rule because he moved for a judgment of acquittal on the basis of a lack of evidence, and that his right to acquittal "matured" at that time. A new trial, however, was one of petitioner's remedies. As we said in *Bryan* v. *United States,* 338 U. S. 552, 560 (1950), where one seeks reversal of his conviction, "assigning a number of alleged errors on appeal, including denial of his motion for judgment of acquittal . . . 'there is no double jeopardy upon a new trial.'" Even though petitioner be right in his claim that he did not request a new trial with respect to the portion of the charge dealing with the statute of limitations, still his plea of double jeopardy must fail. Under 28 U. S. C. § 2106, the Court of Appeals has full power to go beyond the particular relief sought. See *Ball* and other cases, *supra.* Nor does *Sapir* v. *United States,* 348 U. S. 373 (1955), require a different conclusion, as petitioner claims. The Court of Appeals there, holding the evidence insufficient to convict, had first reversed and remanded with instructions to dismiss the indictment, and later, on the Government's motion, had remanded instead for a new trial on the ground of newly discovered evidence. This Court held that the original order directing the indictment to be dismissed was the correct one, and refused to pass on questions presented by the order directing a new trial.

While petitioner contends that here the action of the Court of Appeals on rehearing was based on new evidence,

as in *Sapir,* this is incorrect.  Here there was no lack of evidence in the record.  As the Court of Appeals pointed out, "The jury was simply not properly instructed."  264 F. 2d, at 956.  On the other hand, the order to dismiss in *Sapir* was based on the insufficiency of the evidence, which could be cured only by the introduction of new evidence, which the Government assured the court was available. Moreover, Sapir made no motion for a new trial in the District Court, while here petitioner filed such a motion. That was a decisive factor in Sapir's case.  See concurring opinion, 348 U. S., at 374.  Furthermore, the power of the Court of Appeals to revise its original judgment and order the new trial on rehearing was not questioned in *Sapir.*

We believe petitioner overlooks that, when he opened up the case by appealing from his conviction, he subjected himself to the power of the appellate court to direct such "appropriate" order as it thought "just under the circumstances."  Its original direction was subject to revision on rehearing.  The original opinion was entirely interlocutory and no mandate was ever issued thereon. It never became final and was subject to further action on rehearing.  *Department of Banking* v. *Pink,* 317 U. S. 264 (1942).  In *Pink,* we said that the petition on rehearing "operates to suspend the finality of the . . . court's judgment, pending the court's further determination whether the judgment should be modified so as to alter its adjudication of the rights of the parties."  317 U. S., at 266.  To hold otherwise would deprive the Government of the right to file a petition for certiorari here in criminal cases decided favorably to the defendant in the Court of Appeals, for such a petition might be attacked as a prohibited appeal by the Government on a motion for a new trial.  It would be tantamount to a verdict of acquittal at the hands of the jury, not subject to review by motion for rehearing, appeal, or certiorari in this Court.  We cannot subscribe to such a theory.

*Affirmed.*

MR. JUSTICE HARLAN, concurring.

I feel it necessary to add a few words to make clear the basis on which I join in the Court's judgment.

1. As I read the record I believe the case is fairly to be viewed as having been submitted to the jury only on the subsidiary-conspiracy theory. For although there are passages in the trial court's charge which can be said to have proceeded on a continuing-conspiracy theory, these passages, taking the charge as a whole, are, in my view, too ambiguous to justify our saying that the jury must have understood that it could also consider the case on that basis.

2. I do not think that because of its omission to object to the trial court's failure to give a continuing-conspiracy charge, the Government was precluded, under Rule 30 of the Federal Rules of Criminal Procedure, from raising that point on appeal. That Rule provides:

> "No party may assign as error any portion of the charge or omission. therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection."

In my view the Rule has no application here. Accepting, as I do, petitioner's claim that the charge did not include a continuing-conspiracy theory, it erred in the Government's favor. I cannot believe that Rule 30 requires the party favored by an erroneous charge to point out to the court what the correct charge would be if its decision were to be reversed on appeal. Furthermore, since our opinion in the *Grunewald* case, 353 U. S. 391, was not yet available to the parties or the court, the charge undoubtedly appeared correct to both sides. The Government was no more culpable for not challenging it than petitioner was for requesting it. Nor does the Government's request for a new trial in the Court of Appeals

constitute a cross-appeal. It did not, and could not, seek a result more favorable to itself than that reached by the trial court; rather, it simply opposed the relief for which petitioner contended.

3. I think the record sustains petitioner's contention that he did not, either in the trial court or in the Court of Appeals, request a new trial with respect to the portion of the charge dealing with the statute of limitations.* He is subject to retrial solely because he appealed his conviction and because, in the circumstances disclosed by this record, such relief was just and appropriate under 28 U. S. C. § 2106. The *Ball, Green,* and *Bryan* cases, cited in the Court's opinion, *ante,* p. 425, establish that the right of an appellate court to order a new trial does not turn on the relief requested by the defendant, and the *Sapir* case does not suggest such a distinction.

4. Since the Court of Appeals held only that the case *might* have been tried on a continuing-conspiracy theory, I express no opinion on the permissible duration of a conspiracy to violate § 145 (b) or on the sufficiency of the evidence adduced to prove its continuation. Those questions should be resolved in further proceedings.

MR. JUSTICE WHITTAKER, concurring.

I join the Court's opinion but desire to add a word. MR. JUSTICE CLARK's clear, full, and accurate statement of the facts demonstrates errors by nearly everyone having to do with the case in the lower courts except the Government; yet it lost the case on appeal.

---

*It appears that while petitioner's post-trial memorandum assigned the sufficiency of the evidence in routine fashion as one of the grounds for a new trial, he relied in the trial court entirely on the ground of newly discovered evidence, and in the Court of Appeals on that ground plus erroneous admission of evidence and certain errors in the charge not here relevant.

Petitioner, though not charged by the indictment with a "subsidiary conspiracy," nevertheless asked, and induced the court to give in his very words, a charge to the jury saying that unless they found a "subsidiary conspiracy" they should acquit him. There being neither charge in the indictment nor evidence in the record of "subsidiary conspiracy," the requested and obtained charge to the jury amounted to a virtual direction to acquit. And if the jury, in obedience to that charge, had acquitted, its verdict would, of course, have ended the case. Therefore, petitioner, by requesting and inducing the court to give this erroneous charge, got much more than he was entitled to under the law. Yet, he claimed in the Court of Appeals that this very charge, because unsupported by evidence, was erroneous and required an outright reversal. The Court of Appeals, though finding adequate evidence to support the *indictment,* first took that view. It seems plain to me that petitioner, having asked and obtained an erroneous but far more favorable charge than he was entitled to, certainly invited the error, benefited by it, and surely may not be heard to attack it as prejudicial to him, especially when, as seems quite plain, it was prejudicial only to the Government. I realize there is no profit in decrying a spent transaction, but I cannot resist observing the obvious, namely, that in these circumstances, the law required affirmance of the judgment.

After the Court of Appeals had written its original opinion reversing, the Government, in an effort to salvage the case, timely moved for a rehearing, saying, in effect: "Perhaps, we were in error in not objecting to the charge requested by the accused, and given by the court to the jury, on 'subsidiary conspiracy,' but we should at least have an opportunity to retry the case." The Court of Appeals then agreed with the Government's forced contention, and accordingly modified its opinion and remanded the case for a new trial. Petitioner complains

of this, urging that the court's original *opinion* "acquitted" him, and that to try him again would violate the Fifth Amendment's prohibition against double jeopardy. That contention, it seems to me, is totally devoid of merit. The Court of Appeals rendered but one *judgment* in the case, and it was one remanding for a new trial. Petitioner, instead of complaining that he was given only a new trial, should be thankful that his conviction was not affirmed.