UNITED STATES of America,
Plaintiff–Appellee,

v.

Ross HUEBNER, Defendant–Appellant.

UNITED STATES of America,
Plaintiff–Appellee,

v.

John WILLIAMS, Defendant–Appellant.

Nos. 92–10543, 92–10577.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 16, 1993.

Decided Feb. 10, 1994.

John G. Watkins, Las Vegas, Nevada, and Susan N. Wasko, Las Vegas, Nevada, for the defendants-appellants.

Robert E. Lindsay, Alan Hechtkopf and Karen Quesnel, United States Department of Justice, Tax Division, Washington, D.C., and Karen Moss and Steven Ward, Las Vegas, Nevada, for the plaintiff-appellee.

Before: FAIRCHILD,* BEEZER and WIGGINS, Circuit Judges.

FAIRCHILD, Senior Circuit Judge:

## OVERVIEW

Ross Huebner was convicted of ten counts of aiding and abetting three people in the attempted evasion of payment of their income taxes for various years, 18 U.S.C. § 2, 26 U.S.C. § 7201. Huebner and John Williams were also convicted of conspiracy to commit the attempted evasion offense and to defraud the United States by obstructing collection of income taxes. 18 U.S.C. § 371.

The principal issues are (1) whether the filing of a petition in bankruptcy for the purpose of causing an IRS levy on one's wages to be released can constitute an attempt to evade or defeat one's income tax or the payment thereof under 26 U.S.C. § 7201, and (2) whether a conspiracy to cause the release of an IRS levy on people's wages by having them file petitions in bankruptcy containing false statements of indebtedness can constitute a conspiracy to defraud the IRS by obstructing its collection of income taxes owed by those people, under 18 U.S.C. § 371.

These convictions arose out of the participation of Huebner and Williams in the activity of John Freeman in assisting numerous taxpayers (tax protesters) whose income taxes the IRS was trying to collect. Freeman was also indicted, but was found incompetent to stand trial. The pattern, probably devised by Freeman, was typically as follows:

When a person, whom we will refer to as "taxpayer" although usually more accurately described as a non-taxpayer, would bring Freeman an IRS notice of levy on his wages, Freeman would tell the taxpayer that he should file in bankruptcy because that would stop the levy. Freeman would supply petition forms which the taxpayer would fill out and sign. Freeman would have the taxpayer sign a backdated promissory note to Constitutional Sulphur (apparently Freeman). This would appear to establish a debt of many thousands of dollars, and require substantial monthly interest payments. Free-

man specified the amount, large enough so that if paid the taxpayer's income would be largely or wholly absorbed. This indebtedness, which was clearly sham, and the interest payments, were shown on the bankruptcy forms. Huebner would prepare the notes for the taxpayer's signature and Freeman would give "receipts" for previous payments, which had not been made, and promise to give receipts for future payments, also not actually to be made. He assured the taxpayers he would not collect the notes. Williams would usually sign the note as witness, and take the petition to court and file it.

Upon filing, the IRS would be notified, and because of the automatic stay (11 U.S.C. § 362(a)) the IRS would immediately release the levy. The stay would remain in effect, unless lifted, until dismissal or other termination of the bankruptcy proceeding or other event specified by statute. Most, if not all, the tax obligations involved in this case would not be dischargeable in bankruptcy. 11 U.S.C. § 523(a)(1). The maneuver engineered by Freeman, with the participation of Huebner and Williams, would temporarily stall the process of collection by levy or other proceeding.

## DISCUSSION

### I. Attempted Tax Evasion

■ Defendants correctly argue that filing of a petition in bankruptcy will not result in wiping out liability for the income taxes involved here. The filing causes the release of the levy, and impedes for some period of time the process of collection. It will not lead to discharge of the debt.

The government does not really argue to the contrary. It points to the possibility that the taxpayers could repeatedly file bankruptcy petitions and thus ultimately avoid payment, and to a suggestion Williams made to an undercover agent, posing as a taxpayer, that he could repeatedly file bankruptcy petitions. Noting conduct by the taxpayers in this case such as failures to file returns and filing false withholding certificates as well as the long periods over which their past due taxes remained unpaid, counsel argued that

* Honorable Thomas E. Fairchild, Senior Circuit Judge, Seventh Circuit, sitting by designation.

"the jury could reasonably find that the filing of the false bankruptcy petitions was intended as a means of evading the payment of taxes, not merely postponing payment." Government Brief, *Huebner*, pp. 24–25. Thus a bankruptcy filing could constitute, under 26 U.S.C. § 7201, an attempt to evade or defeat a tax or payment thereof, if the jury found that the taxpayer intended to engage in repeated filing or similar resistance to collection in the future.

■ We do not agree. The indictment contains no suggestion that filings would be repeated. Indeed, it charges that "[t]hese petitions had the effect of immediately stopping all collection activity by the IRS and, therefore, evading and defeating the payment of income taxes owed to the United States of America." Each count charging the aiding and abetting of evasion alleged that it was accomplished "by aiding, abetting, advising, and counseling ... [taxpayer] to make, sign, and file ... a false and fraudulent Voluntary Petition for bankruptcy ...," without alleging any intent as to future conduct on the part of either the defendant or the taxpayer. In any event, we do not view the possibility of repetition of the process plus the evidence of the taxpayers' antipathy to payment as sufficient evidence to turn an act which caused temporary delay in collection into an attempt to evade or defeat the tax under the statute.

Section 7201 provides that "[a]ny person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof shall ... be guilty of a felony...." The government would construe "evade or defeat ... payment" as including "temporarily obstruct" collection. In *Edwards v. United States*, 375 F.2d 862, 867 (9th Cir.1967), we held that "[e]vasion and defeat, as we understand their use in this section, contemplate an escape from tax and not merely a postponement of disclosure or payment.... [The evasion] focuses on the accused's intent to deprive the Government of its tax moneys, and this requires more than just delay." (Footnote omitted.) In an earlier case, we had used the language, "Tax evasion may include attempts not only to block prosecution of the taxpayers but to block collection of the tax." *Forman v. United States*, 261 F.2d 181, 183 (9th Cir. 1958), *judgment aff'd*, 361 U.S. 416, 80 S.Ct. 481, 4 L.Ed.2d 412 (1960). The *Forman* court was dealing with a distinction, for application of the statute of limitations, between acts of concealment intended to block prosecution of taxpayers for tax evasion and acts of concealment intended to block prosecution of conspirators for conspiracy. It is clear from the context that the use of the phrase "block collection of the tax" has no significance on the matter of temporary obstruction in the present case.

■ In *United States v. DeTar*, 832 F.2d 1110 (9th Cir.1987), the taxpayer had filed income tax returns, reporting a substantial amount due, but paid only a nominal portion. He placed assets in the names of nominees and beyond the reach of process. He dealt primarily in cash. The likely effect of his conduct would be to conceal assets and avoid collection. He was convicted of willfully attempting to evade and defeat payment of tax in violation of § 7201. This court held that the intent to evade or defeat the tax or its payment could be inferred from his conduct. The evidence was deemed sufficient to support a conviction. *Id.* at 1114. Thus *DeTar* stands for the proposition that one who willfully attempts to escape tax by making collection impossible commits the § 7201 offense.

■ The difference between *DeTar* and the case before us is that in *DeTar*, concealment of assets could defeat tax by wholly defeating collection, and an intent to do so could be inferred. Filing of a bankruptcy petition would temporarily obstruct collection, but could not possibly wipe out the tax obligation nor permanently prevent collection. Conduct that could accomplish an escape from the tax need not be successful in order to violate § 7201, since that offense consists of an attempt. We think, however, that conduct that could not possibly result in escape cannot amount to an attempt to evade or defeat the tax, nor be a basis for an inference of an intent to do so.

■ The bankruptcy filings produced delay, but would not defeat, or result in escape

from, the tax. Therefore Huebner's convictions of aiding and abetting attempted tax evasion must be reversed.

## II. Conspiracy to Defraud the United States

Count One of the indictment charged Huebner and Williams, along with Freeman and several taxpayers whose cases were severed, with conspiracy in violation of 18 U.S.C. § 371. That section punishes for conspiracy "either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose. . . ." Count One charged a conspiracy both (1) to commit an offense (evasion of payment of income taxes in violation of 26 U.S.C. § 7201) and (2) to defraud the United States by impeding, impairing, obstructing, and defeating the lawful governmental function of the Internal Revenue Service in the collection of income taxes.

■ We have decided in Part I of this opinion that the bankruptcy filings did not constitute the offense of evasion in 26 U.S.C. § 7201. We now deal with the question whether these filings could be found to defraud the United States in the manner charged. We conclude that they could.

Although this branch of § 371 speaks of a purpose "to defraud the United States . . .," the statute "reaches 'any conspiracy for the purpose of impairing, obstructing or defeating the lawful function of any department of Government,'" *Dennis v. United States,* 384 U.S. 855, 861, 86 S.Ct. 1840, 1844, 16 L.Ed.2d 973 (1966) (citations omitted). *See United States v. Little,* 753 F.2d 1420, 1443 (9th Cir.1984) (conspiracy to obstruct collection of income taxes punishable under § 371); *accord United States v. Jerkins,* 871 F.2d 598, 602 (6th Cir.1989); *United States v. Rosengarten,* 857 F.2d 76, 79 (2d Cir.1988), *cert. denied,* 488 U.S. 1011, 109 S.Ct. 799, 102 L.Ed.2d 790 (1989). There must, however, be an agreement to obstruct by "deceit, craft or trickery, or at least by means that are dishonest." *United States v. Caldwell,* 989 F.2d 1056, 1059 (9th Cir.1993) (quoting *Hammerschmidt v. United States,* 265 U.S. 182, 188, 44 S.Ct. 511, 512, 68 L.Ed. 968 (1924)).

■ The filing of a bankruptcy petition by one who owes income tax, causing the automatic stay to arise, surely obstructs, for a time, the collection of the tax. Nevertheless, one who files in order to seek the protection which the Bankruptcy Code is really intended to provide, would scarcely be charged with the purpose to defraud the United States. Perhaps it could be argued that a filing for the sole purpose of obstructing the collection of income taxes which are not dischargeable and are no longer subject to challenge, as the jury could find in this case, is sufficiently "dishonest" so that there is a purpose "to defraud." The government did not try the case on that theory nor argue it on appeal, and we do not decide that question. In this case, however, it was also charged and proved that fraudulent promissory notes were prepared and signed and that the petitions were false in listing the spurious debt and required monthly payments to Constitutional Sulphur, so that the taxpayer-petitioners' total monthly expenses would approximate or exceed total monthly income.

Defendants argued mainly that the filing of a bankruptcy petition containing the false assertions was not an attempted evasion. "At best, it would be bankruptcy fraud not income tax evasion." Huebner Brief at 4. It seems fair, however, to consider (though not directly argued) whether the false assertion of debt and payments to Constitutional Sulphur supplied the element of dishonesty required for a conspiracy to defraud even if the intent to use the automatic stay to obstruct collection, without more, did not. We think it did, for the following reasons.

The assertion created a deceitful appearance of financial hardship and a readily understandable reason for seeking the protection of bankruptcy. The automatic stay, although it could be lifted earlier, would terminate if the proceeding were dismissed. The facts falsely asserted would tend to render less likely a dismissal of a Chapter 7 case for substantial abuse of the provisions of that chapter (§ 707(b)). There was testimony that the IRS may settle a claim in return for a promise of installment payments, based on ability to pay, and may suspend collection

where hardship is shown. If the facts falsely claimed were true, they might affect the IRS' willingness to suspend collection or settle its claim.

### III. Other Defense Arguments

#### A. Claim of Change of Theory During Trial

Huebner's contention that he was tried and convicted on theories not alleged in the indictment is largely directed at the counts charging aiding and abetting attempted evasion. To that extent, the contention is moot. In any event, we are satisfied that the government's theory at trial was consistent with the charges set out in Count One, the conspiracy count, of the indictment.

#### B. Juror Confusion

Huebner argues that because of the alleged change in the government's theory the jury's findings based on evasion of income taxes were the product of confusion, caused by the government. This argument is also moot.

#### C. Motion for Mistrial

■ Huebner, Williams and five taxpayers were originally brought to trial. Each taxpayer was charged with conspiracy in Count One and with several counts of attempted tax evasion. Much of the evidence relevant to each taxpayer was not relevant to the other four unless and until a single conspiracy involving all was established. During the trial, the court granted severance to the five taxpayers. The situation was somewhat different as to Huebner and Williams because of their continuing involvement with Freeman and the taxpayers.

Huebner now argues that the court erred in denying him a mistrial after severance of the others.

The court instructed the jury that evidence admitted solely as to one of the severed defendants should not be considered against Huebner or Williams unless there was a later, different instruction. Much of the evidence was, in fact, relevant to the charges against Huebner, and he has not demonstrated which evidence was prejudicial to him.

The denial of mistrial was not an abuse of discretion.

#### D. Juror Requests for Evidence

■ Judge Pro permitted the jurors to pass up notes requesting evidence on particular points. He would inform counsel of the request. Huebner argues that this practice prejudiced him because "it allowed the prosecutor to become a friend of the jurors, and ... it allowed the jury to participate in the production of evidence (acting like attorneys)." Huebner Brief at 17.

The procedure was entirely neutral, and Huebner does not point out prejudice resulting from any of the few questions asked. There was no error or abuse of discretion. *See United States v. Gonzales,* 424 F.2d 1055, 1056 (9th Cir.1970); *United States v. Callahan,* 588 F.2d 1078, 1086 (5th Cir.), *cert. denied,* 444 U.S. 826, 100 S.Ct. 49, 62 L.Ed.2d 33 (1979).

#### E. Special Verdict

■ Both defendants argue that it was error not to submit a special verdict which would show whether the jury found a conspiracy to evade income taxes or a conspiracy to defraud the United States. We find no abuse of discretion.

Generally, "when a jury returns a guilty verdict on an indictment charging several acts in the conjunctive ... the verdict stands if the evidence is sufficient with respect to any one of the acts charged." *Turner v. United States,* 396 U.S. 398, 420, 90 S.Ct. 642, 654, 24 L.Ed.2d 610 (1970); *United States v. Outpost Dev. Co.,* 552 F.2d 868, 869 (9th Cir.), *cert. denied,* 434 U.S. 965, 98 S.Ct. 503, 54 L.Ed.2d 450 (1977); *Griffin v. United States,* —— U.S. ——, ——, 112 S.Ct. 466, 469, 116 L.Ed.2d 371 (1991) (general jury verdict valid so long as legally supportable on one of the submitted grounds—even though no assurance that a valid ground, rather than an invalid one, was actual basis for a jury's action).

#### F. Motion for Disclosure of Exculpatory Evidence

■ After the commencement of trial, Huebner's counsel filed a motion entitled

■

"Motion for Disclosure of Exculpatory Evidence (Rule 16)." It stated that it was filed under the authority of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and contained 35 numbered requests, some with subdivisions. The second of 19 subdivisions of paragraph 20 requested "All Documents maintained in the system of records known as Individual Master File (IMF) Treasury/IRS 24.030, which pertain to the Defendant."

The district court denied his motion without prejudice. The IMF was written in code, with numbers standing for events and procedures. Huebner contends that the district court's denial prevented him from effectively cross-examining a prosecution witness as to the accuracy of the IMF and its contents. He states that his counsel was unable to translate the document and was unaware of its evidentiary significance until trial, and that counsel could not possibly have known that the prosecution would make use of it. Huebner also contends that the court's ruling deprived him of his right to exculpatory evidence under *Brady.*

In response, the government states that, prior to trial, defense counsel had access to documents which translated the IMF into a readable form, as well as access to Certificates of Assessments and Payments, which had been prepared from the IMF and contained translations of its relevant information. Counsel's brief, although asserting generally that he had found inconsistencies in the IMF so great that the IMF document is "literally" fraudulent, and "a fraud, a shame, a red herring," contains no description of any prejudicial use of the IMF at trial, and no demonstration of unfair prejudice nor that any information would have been exculpatory, so as to invoke *Brady.*

We find no error.

### G. Sufficiency of Evidence

■ Examination of the record has satisfied us that there was ample evidence to support a jury verdict that both defendants were guilty of conspiracy to defraud the government. The evidence of repeated activity of each in carrying out what we have referred to as the Freeman pattern readily

supports the inference that they agreed to participate with knowledge of the purpose. Setting out the detail of each piece of evidence would be an unnecessary exercise. Several overt acts were proved.

The conviction of defendant Huebner on the aiding and abetting counts is **REVERSED,** along with the special assessment for those counts. His conviction on Count One (conspiracy) is **AFFIRMED.** His sentence is **VACATED,** and the cause **REVERSED** for resentencing on Count One.

The conviction and sentence of defendant Williams are **AFFIRMED.**

WIGGINS, Circuit Judge, dissenting in part and concurring in part.

I dissent from part 1 of the opinion of the court. I concur in the balance of the opinion.

The opinion accurately characterizes the "taxpayers" as "tax protesters". It might have further characterized them as "tax resisters", as well. These "taxpayers" were typically wage earners whose sole income was devised from wages.

The majority disagrees with the district court in its conclusion that Huebner was guilty of count 1, the count alleging an attempt to evade or defeat income tax liability. It points to the fact that a scheme such as that presented here was held in *Edwards v. United States,* 375 F.2d 862, 867 (9th Cir. 1967) to be merely a postponement of disclosure or payment, not an intent to deprive the government of its tax revenue.

I think this conclusion is in error. The filing of fraudulent bankruptcy forms had the immediate effect of releasing wages seized by the IRS to the "taxpayer". Such a release effectively "evaded" the prompt and just payment of the taxes seized. That the tax remains payable is of little present concern: the next effort to collect taxes can be met with similar acts of evasion. In my view, Huebner was guilty of attempting to evade the income tax liability of the "taxpayers".

Because the holding today unnecessarily restricts the IRS in its effort to collect taxes from that portion of the public who resist

collection, I dissent from part 1 of the opinion.