ROGERS, Circuit Judge,
concurring.
Although I agree that the judgment of conviction must be affirmed, I would hold that Andrews has failed to show plain er *911 ror with respect to her Brady challenge and, without joining unnecessary discussion of the termination date of the conspiracy, with respect to the district court’s application of the 2006 edition of the Sentencing Guidelines.
I.
I agree that the notes at issue constituted Brady material, Op. at 906, which the prosecutor was required to turn over to defense counsel prior to trial pursuant to the district court’s order and long-established precedent, see, e.g., United States v. Harrison, 524 F.2d 421, 427 (D.C.Cir.1975). The failure to do so is particularly troubling because the prosecutor knew of the notes prior to Andrews’ defense counsel’s accidental discovery of their existence while cross-examining Agent Robinson at trial. Trial Tr. 679-80 (July 26, 2006). I do not agree, however, that production of the notes was nonetheless timely. Op. at 907-08. Brady requires early enough disclosure that a defendant can make meaningful use of material. Cf. United States v. Wilson, 160 F.3d 732, 742 (D.C.Cir.1998); United States v. Dean, 55 F.3d 640, 663 (D.C.Cir.1995). Contrary to the court’s view, it seems highly implausible to suggest that defense counsel could have restructured his defense to save the best for last, Op. at 907-08, or more generally that a defense trial strategy, any more than a prosecution trial strategy, can be effectively reworked four days into trial, at the close of the government’s case, cf. Op. at 907-08. The prosecution’s tardy disclosure forced Andrews’ counsel to choose between recalling a strong government witness after a mid-trial continuance and risk cementing her testimony more firmly in the mind of the jury, or not impeaching the witness at all. Whatever the merits of defense counsel’s effort to navigate a middle course, stating that the defense would not recall Agent Robinson as its witness but ensuring that the notes would be available for impeachment if the government did, Trial Tr. 718 (July 27, 2006), it was a strategic decision forced by the prosecutor’s delay. So understood, the defense case was compromised, no matter the “tactics” Andrews’ counsel deployed following his receipt of the notes.[1]
The significance of the prosecutor’s delay in producing the notes is manifest. Agent Robinson’s testimony was an important part of the government’s case, which was not overwhelming to begin with, because her description of the interview with Andrews tied together a set of otherwise circumstantial facts. Recognizing this, the prosecutor focused on the interview during closing argument, telling the jury that Andrews attempted to “conceal ... her involvement ... by coming up [with] one preposterous story after another,” Trial Tr. 900 (July 28, 2006), using Agent Robinson’s testimony to color and frame facts that could otherwise be excused as a series of innocent coincidences. WTiile it is true that Agent Robinson’s notes corroborate some of her damaging testimony, see Op. at 906-07, they omit any mention of two of the “preposterous stor[ies]” relied on by the prosecutor at closing, specifically that Andrews had stated she wanted to use the check to prove possession of a checking account; and that Andrews claimed to have repaid Turner in February 2001.[2] Although alerting the jury to these omissions would not constitute a knock-out *912 blow, it is at least plausible that the jurors’ confidence in Agent Robinson’s memory and veracity would have been undermined. Under these circumstances, earlier disclosure of the notes could have allowed a different, more effective defense strategy and their tardy handover “ ‘undermine[s] confidence in the outcome’ ” of the trial, Dean, 55 F.3d at 663 (quoting United States v. Bagley, 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985)), and thus constitutes a Brady violation.
Unfortunately for Andrews, her burden is greater than simply showing a “reasonable probability” of a different verdict, Strickler v. Greene, 527 U.S. 263, 280, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999); because no objection to the delayed handover was made in the district court, Op. at 12, she must now show plain error, see United States v. Johnson, 437 F.3d 69, 74 (D.C.Cir.2006), which she cannot do. In particular, Andrews cannot show that the Brady violation affected her “substantial rights.” Id. Under this part of the plain error test, “the burden on prejudice is reversed, requiring the defendant to show the error’s likely effect on the verdict.” United States v. Wilson, 240 F.3d 39, 45 (D.C.Cir.2001), citing United States v. Olano, 507 U.S. 725, 734, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). The government presented significant circumstantial evidence tying Andrews to the charged crimes. This included her ample opportunities to access human resources files; her possession of the knowledge necessary to insert a forged FEGLI form in Mayo’s file; Turner’s payment of $1,000 to her in the form of a check soon after he received his share of Mayo’s life insurance; and the unchanging nature of her bank withdrawal habits in the month she claimed to have repaid Turner. See Trial Tr. at 346-51; 647-48; 650-51; 656-58 (July 25-26, 2006). To conclude that the verdict would likely have been different, the court must assume that in addition to the circumstantial evidence, Agent Robinson’s testimony was necessary to the guilty verdict and that impeachment of her on the basis of her notes would have been sufficient to alter the verdict. While there is a reasonable probability that timely disclosure of the notes could have led to a different verdict, the impact of such disclosure is too uncertain for Andrews to demonstrate that the verdict would likely have been different.[3]
II.
With regards the ex post fado challenge to the sentence, I would rely only upon the first basis the court identifies for holding that the error was not plain, Op. at 908-09, and do not join the dictum discussing the application of Grunewald v. United States, 353 U.S. 391, 77 S.Ct. 963, 1 L.Ed.2d 931 (1957), and Forman v. United States, 361 U.S. 416, 80 S.Ct. 481, 4 L.Ed.2d 412 (1960), Op. at 908-10. Because the error by the district court in using the 2006 edition of the Guidelines was neither “ ‘clear’ ” nor “ ‘obvious,’ ” United States v. Sumlin, 271 F.3d 274, 281 (D.C.Cir.2001) (quoting United States v. Olano, 507 U.S. 725, 734, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993)),[4] the court need not opine that the date that the conspiracy terminated is legally “uncertain[ ],” Op. at 910.

. Exactly how Agent Robinson might have explained the omissions, and how the jury would have assessed any such explanation, are hypotheticals to which the government responds with mere speculation. See Op. at 906-07.

. Although the government suggests the notes can be construed as referring to using a check to prove possession of a checking account, Op. at 906-07; Resp. Br. at 17, one searches the notes in vain for such a reference.

. For the reasons stated by the court, Op. 903-04 n. 1, there was sufficient evidence to support Andrews' convictions for conspiracy and bribery.

. Because Andrews did not make this objection in the district court, our review is limited to plain error. See Johnson, 437 F.3d at 74.